# HUGHES *v.* THE PEOPLE.

(*Supreme Court of Colorado, March, 1881—Error to the County Court of Clear Creek County.*)

CONTEMPT—STATUTORY ENUMERATION OF CAUSES FOR, DO NOT LIMIT THE POWERS OF THE COURTS. Such a statutory enumeration of causes, as is found in the Code, when applied to the ever-varying facts and circumstances out of which questions of contempt arise, cannot be taken as an arbitrary measure and limit of the inherent power of a court for its own protection, and for the proper dignity of authority which is essential to the effective administration of the laws.

SAME—SAME. The right of self-preservation is an inherent right in the courts. It is not derived from the legislature, and cannot be made to depend upon the legislative will. The power to punish for contempt is an incident to all courts of justice, independent of statutory provisions.

CONTEMPT—CAUSE PENDING—JURISDICTION. Proceedings were had in the county court in relation to the settlement of an estate. From a determination of some issues therein, an appeal was taken to the district court, which, upon hearing, found that certain moneys, etc., of the estate were in the possession of plaintiff in error, and made an order that the same be delivered to the administrator, and be accounted for to the county court, and that this order be certified to the county court. This was done, and thereupon a citation was issued out of the county court, requiring plaintiff in error to appear therein and show cause why he should not comply with the order of the district court. *Held,* that the citation was proper, and there was a cause pending of which the county court had jurisdiction; that the county court had the power to issue the citation, and a failure to comply and properly respond thereto is a contempt punishable under the law.

CONTEMPT—JUDICIAL DISCRETION. Courts possess a wide latitude for the exercise of discretion in all such cases, and the judge is himself the best qualified to determine whether the refusal to comply with the order of the court was intended as a contempt, or was, in fact, a contempt of the judicial authority.

CONTEMPT—LANGUAGE USED IN A PLEADING. A pleading which directly charged the judge of a court wherein a cause was pending with colluding with the adverse party, for the purpose of "gaining an unjust and undue advantage," implies judicial corruption and unjust oppression upon the part of the judge, and comes within the definition of disrespectful, contumacious, insolent and contemptuous language and conduct toward the court, or judge thereof, respecting his official conduct, and warranted the judge in taking cognizance of it summarily, as though the words, instead of being written and read in court, had been spoken *in facie curiæ.*

CONTEMPT—FACTS IN PETITION FOR CHANGE OF VENUE—MANNER OF STATING THEM. In a petition for a change of venue, the provisions of the Code contemplate that facts shall be stated and set forth, sufficient to inform the judge of the nature and foundation of the apprehension of the petitioner. But they are not to be set out beyond what is necessary, when

they involve the judicial acts of the judge; and it is never necessary to set out facts in themselves, or by the manner of stating them, calculated to scandalize the court, or judge thereof, or bring them into public contempt.

CONTEMPT—TRIAL FOR SUMMARY. No formal trial is had in cases of contempt. Where the matter constituting an alleged contempt is brought to the knowledge of the court or judge by affidavit, and not committed in the presence of the court, the person so charged, when brought before the court, may be interrogated in order both to inform the court as to the truth of the matter, and to give the accused opportunity to purge the contempt, if he will or can; but the proceeding is, in all cases, summary, and without the intervention of a jury.

CONTEMPT—NOT A QUESTION OF INTENTION. Contempt is not purged by an avowal that none was intended. The question is not one of intention, although where contempt is intended, this is an aggravating feature which goes to the gravamen of the offense.

STONE, J. Proceedings were had in the county court of Clear Creek county, in relation to the settlement of a certain estate. From the determination of some issue in controversy therein, an appeal was taken to the district court, which, upon a hearing thereof, found that certain moneys, goods and chattels of the estate were in possession of the plaintiff in error, W. T. Hughes, and other persons named. It was thereupon ordered by the district court that the said property be delivered to the administrator of said estate; that said persons account to the county court for the same; that the said Hughes pay into said county court a certain sum of money received by him from the sale of effects belonging to said estate, and that he account to said court for the sums paid out on account of the estate, and that this order of the district court be certified to the said county court, to the end that the same be enforced as the law directs. A citation was accordingly issued out of the county court, requiring Hughes and the other defendants to appear in said court and show cause why they should not comply with the order certified from the district court. To this citation Hughes appeared by attorney, and filed a sworn answer, and also, an affidavit for a change of venue, both of which papers contained charges assailing the judicial conduct and integrity of the judge of the said county court in which the papers were filed. Thereupon a writ of attachment against Hughes was issued to bring him before said court, to answer for a contempt, for the use of the language employed in the documents filed as aforesaid.

Since the writ relates the principal facts upon which the pro-

ceedings for contempt sought to be reviewed here are founded, it is inserted entire, as follows:

STATE OF COLORADO, } ss.
   *Clear Creek County.* }

*The People of the State of Colorado to the Sheriff of Clear Creek County, Greeting:*

We command you to take William T. Hughes, and him safely keep, so that you have his body forthwith before our county court of Clear Creek county, at a term now being held at the court house in Georgetown, for probate matters, to answer us for and concerning a contempt of our said court, in this, to wit: on the 24th day of June, 1879, in the district court in and for said county, at the regular June term thereof, A. D. 1879, in a case then and therein pending, wherein Daniel Ernst, administrator of the estate of Jenny Akin, against William T. Hughes, William J. Hurd and Frank X. Aicher; after the trial of said case by said district court, the following order was therein entered by said district court, to wit:

Now, at this day comes the plaintiff, by his attorney, G. G. White, and the said defendants by their attorney, John A. Coulter, and this cause came on to be heard, and is submitted to the court without a jury, and, after hearing all the testimony, and the court being sufficiently advised in the matter, it is ordered by the court that the defendants, W. T. Hughes, Wm. J. Hurd and Frank X. Aicher, deliver to the said administrator, all and singular, the goods and chattels belonging to the said estate, viz: one bedstead, one bureau, one commode, one rocking chair, one heating stove, one dining table, one meat safe, one wash bowl, one bed spring, one mattress, one bolster, two pillows, two bed spreads, three comforts, and all other articles of personal property that they and each of them have in their possession, or under their control; and it appearing that Charles H. Martin has in his possession certain property belonging to said estate: one trunk and contents, one wash bowl and other articles, it is ordered that he deliver the same to said administrator, and that the said defendants and the said Martin are hereby required to account to the county court of this county for all personal property they, or any of them, have had, or may have, in their possession or under their control, belonging to said estate. It is further ordered that the said William T. Hughes pay into said county court the sum

of nineteen dollars, received by him from the sale of personal property belonging to said estate, and had and received by him from said estate, except as to such amount as he may have paid out on account of said estate, and for which he will account to said county court and that the said defendants pay the costs of this appeal and all other proceedings had herein; and that the order be certified by the clerk of this court to the said county court, and the same be there enforced as the law directs.

That afterwards, to wit: on the 15th day of July, 1879, a copy of the said order was filed in the said county court.

That afterwards, on the 5th day of August, A. D. 1879, by order of the attorney of the estate of said Jenny Akin, a citation, under the hand and seal of said county court, was duly issued, requiring the said defendants, Wm. T. Hughes, Wm. J. Hurd, Frank X. Aicher and Charles H. Martin, to be and appear before said county court on the 6th day of August, 1879, then and there to show cause, if any they may have, why they, and each of them, should not comply with the judgment and order of said district court; and that said William T. Hughes show what amount, if any, he has paid out on account of said estate. Which said citation was duly served upon said Wm. T. Hughes, by the sheriff of Clear Creek county, on the day of the date hereof; and on said Frank X. Aicher, on the 6th day of August, 1879, and on said last day duly returned in court.

That upon last said date the said Wm. T. Hughes failed to appear in said county court in person, but did appear by John A. Coulter, Esq., his attorney; and upon information received by this court from the said John A. Coulter, as such attorney, the court, of its own motion, continued the time for the appearance of said Wm. T. Hughes to answer concerning said citation until Thursday, the 7th day of August, A. D. 1879, at 2 o'clock p. m. of said day. And on the said 7th day of August, A. D. 1879, at 2 o'clock p. m., and for more than one hour thereafter the said Wm. T. Hughes still failed to personally appear before said court in obedience to said citation, and the order extending the time of appearance of said Hughes in respect thereto; but the said John A. Coulter, attorney, did appear for the said William T. Hughes, and presented to the court, to be filed, the pretended answer of the said William T. Hughes, in words and figures following.

"The defendant, in response to the citation issued by the

judge of the county court, within and for the county of Clear Creek, Colorado, on the 5th day of August, A. D. 1879:

I.

"That on the 26th day of June, 1879, an order was made and entered of record in the district court, within and for the county of Clear Creek, Colorado, against William T. Hughes, William J. Hurd, Frank X. Aicher and Charles H. Martin, and in favor of Daniel Ernst, administrator of the estate of Jenny Akin, deceased, ordering these defendants to turn over certain goods and to pay over certain moneys in said order specified, and it was further ordered by the district court, that these defendants have thirty days to file their bill of exceptions in said cause.

"That the defendants, to wit: on the 30th day of June, A. D. 1879, the said Daniel Ernst, administrator of the estate of Jenny Akin, deceased, compromised, released and discharged, and received in accord and satisfaction the goods in the possession of William J. Hurd, one of the above-named defendants, which said compromise, release and discharge is in words and figures as follows, to wit:

DANIEL ERNST, Admin.,  
     *v.*      } No. 2138.  
W. T. HUGHES *et al.*

"Plaintiff and defendants hereby compromise all matters in dispute in this cause, and defendants agree to turn over to plaintiff all goods of the estate of Jenny Akin, now in the possession of William J. Hurd, and law the same no farther, for which plaintiff agrees to absolve them from all existing and further liabilities of whatsoever kind and nature, and the defendants be fully acquitted of the same."

                                      DANIEL ERNST,  
                                        W. T. HUGHES,

June 30, 1879.                            *For Defendants.*

That defendants did, on the 30th day of June, 1879, fully perform their agreements and undertakings in accordance with the above agreement, and did then and there deliver the goods mentioned in the said release and discharge to the said Daniel Ernst, administrator aforesaid, and that said release and discharge was made a part and parcel of the records of the district court of Clear Creek county, Colorado.

That the defendants, relying and believing that said release and discharge, after their compliance with the same, would.

wholly absolve them from any further or other liability in the premises, and that the same were made in good faith, allowed the time for filing bill of exceptions and making up the record in the said district court, within and for the county of Clear Creek, Colorado, to pass without filing the same.

These defendants further state that said Daniel Ernst, administrator aforesaid, had full notice of the above release and discharge, and the performance thereof on the part of these defendants, and did duly accept the terms and conditions of the same.

And these defendants further state that the judge of the county court, within and for the county of Clear Creek, Colorado, had notice of the release and discharge as aforesaid, at or about the time that the same was executed by the said Daniel Ernst, administrator as aforesaid, and further charge, upon information and belief, that G. G. White, attorney of the estate of Jenny Akin, had notice of the release and discharge of these defendants on or about the time that said Daniel Ernst, administrator as aforesaid, executed and performed the conditions of said agreement; and further charge, upon information and belief, that the said county judge and G. G. White, attorney for said estate, and Daniel Ernst, administrator aforesaid, purposely and intentionally acquiesced in the release and discharge given by Daniel Ernst, administrator aforesaid, until the time for perfecting a record of the case in the district court had expired, and thus gain an unjust and undue advantage by these further proceedings in said cause.                    JOHN A. COULTER,
*Attorney for Defendants.*

STATE OF COLORADO, ⎱ ss.
  *Clear Creek County.* ⎰

W. T. Hughes, of lawful age, being first duly sworn on oath, states he has read the foregoing answer, and knows the contents of the same, and that the same are true of his own knowledge, excepting those matters stated on information and belief, and, as to those matters, he believes the same to be true.

W. T. HUGHES.

Subscribed and sworn to before me this August 6, 1879.

ARTHUR D. BULLIS,
*Notary Public.*

That, during the same session of said court, the said Hughes still being absent therefrom, the said John A. Coulter, his attor-

ney, presented to the court the affidavit of said W. T. Hughes, stating causes for a change of venue of said case, which affidavit of said William T. Hughes is in words and figures following, to wit:

STATE OF COLORADO, } ss.     *In County Court.*
   *Clear Creek County.*

DANIEL ERNST, administrator, etc.,
        *v.*
WILLIAM T. HUGHES, WILLIAM J.
  HURD, CHARLES H. MARTIN and
  FRANK X. AICHER.

William T. Hughes, being duly sworn according to law, on oath, states that he is one of the above named defendants in the above entitled cause. That he fears that he cannot have a fair and impartial hearing or trial before John C. McCoy, county judge within and for the county of Clear Creek, Colorado, where the above entitled action is pending, because—

As affiant is informed, and believes, and therefore charges the fact to be, that the said John C. McCoy, county judge of said county, and before whom the said action is now pending, has pre-judged the merits of this action against these defendants; and further, as affiant is informed, and verily believes, that the said John C. McCoy is interested in the result of these proceedings; and further, that the said John C. McCoy, county judge as afore-said, is so prejudiced against this affiant, as to incapacitate him from doing this affiant justice in any cause in which this affiant is a party or has any interest whatever.

That this bitter and disqualifying enmity has existed for over a year last past, and was greatly increased after the sitting of the grand jury at the June term of the district court, before whom, as is said, certain charges were preferred against John C. McCoy, accusing him of taking and securing a bribe from one G. G. White, in a cause pending in said county court, the preferring of which charges the said John C. McCoy charges affiant of being chief and instrumental in bringing about.

For these and other reasons, affiant says that a fair and impar-tial trial cannot be had in said cause, nor of any issue arising out of the same.                  W. T. HUGHES.

Subscribed and sworn to before me this August 6, 1879.

                            J. P. POST,
                          *Justice of the Peace.*

53

Whereupon, upon information imparted to said court, the time for appearance of said Hughes, under the said citation, was extended to August 11, 1879, at 10 o'clock a. m.

Such contempt consisting in—

*First*—The failure of said Hughes to personally appear as required by said citation.

*Second*—The allegations in said answer, sworn to by said Hughes, contained in the eight last lines of said answer, are disrespectful to the judge of said county court, untrue, scandalous and impertinent.

*Third*—The affidavit of said Hughes, stating causes for a change of venue of said case, contain grossly scandalous, untrue and impertinent allegations and outrageously insulting imputations against the said county court and the judge thereof.

And have you then and there this writ, with an endorsement showing how you have executed the same.

Witness J. C. McCoy, judge of said court, and the seal thereof, at Georgetown, this 12th day of August, A. D. 1879.

J. C. McCOY,<br>
*County Judge.*

To this writ the defendant, Hughes, filed his answer as follows:

"The defendant in this cause makes answer and alleges the truth of the allegations in his affidavit for a change of venue as is therein stated.

That said affidavit, excepting the last clause, commencing at the words, "For these and other reasons," etc., was prepared by his counsel in this cause after a consultation with defendant, as to said John C. McCoy's enmity against defendant, and as to its origin and cause.

That the facts set forth in said affidavit, the defendant believes, has reasons to believe, and therefore charges the fact to be, are true in each and every particular; and the facts therein contained this defendant learned from Malcom McCrimmon, David E. Dulaney, Arthur D. Bullis, Samuel Strousse, Frank Bettman, William J. Hurd, Frank X. Aicher, Jacob Harvat, A. K. White, all citizens and residents of Georgetown, in said county and state; also, from I. N. Smith, of Idaho, in said county; also, Alexander Lawson, of Lawson, in said county and state; also, Henry Wilson, of Golden, in Jefferson county, in said state; and by divers persons, residents of Georgetown, in said county and state.

The citation issued in this cause does not require a personal appearance; and if it did, defendant's excuse is, that his wife has been very sick for a week last past, and required his personal care and attention.

Defendant denies that he has intended to treat said county court contemptuously, or insultingly, or put scandalous matters and facts in the court records, except so far as he has been advised by counsel, and verily believes, are matters relevant to the cause before the court, and are susceptible of proof.

W. T. HUGHES."

Our Civil Code provides that "the following acts or omissions shall be deemed contempt:"

"*First*—Disorderly, contemptuous or insolent behavior towards the judge whilst holding court or engaged in his judicial duties at chambers, or towards referees or arbitrators while sitting on a reference or arbitration, tending to interrupt the due course of a trial, reference or arbitration, or other judicial proceedings.

"*Second*—A breach of the peace, boisterous conduct or insolent disturbance in the presence of the court or its immediate vicinity, tending to interrupt the due course of a trial or judicial proceedings.

"*Third*—Disobedience or resistance to any lawful writ, order, rule or process issued by the court or judge at chambers.

"*Fourth*—Disobedience of a subpœna duly served, or refusing to be sworn, or answer as a witness.

"*Fifth*—Rescuing any person or property in the custody of an officer, by virtue of an order or process of such court or judge at chambers."

Aside from inapt language and a faulty manner of expression, these enumerated causes of legal contempt in the Code are much narrower than the common law. The case of *Stuart* v. *The People*, 3 Scam., 395, is cited as authority for the doctrine that when causes for contempt are specified in a statute, they are to be construed as a limitation upon the power of the court. The language of Breese, J., in that case is, that while the statute "affirms a principle that is inherent in all courts of justice,     *     *     *
    *     ' it may also, with great propriety, be regarded as a limitation upon the power of the courts to punish for any other contempt." While we do not think upon the whole case this language intended to declare a doctrine so broadly as is con-

tended for it, there are on the other hand ample authorities for the more reasonable doctrine that such a statutory enumeration of causes as is found in our Code, when applied to the ever varying facts and circumstances out of which questions of contempt arise, cannot be taken as the arbitrary measure and limit of the inherent power of a court for its own preservation, and for that proper dignity of authority which is essential to the effective administration of law.

A leading case of contempt, arising out of language addressed to, or in allusion to, the court, or judges thereof, is that *In re Woolley*, 11 Bush, 95, where the matter involving the contempt was contained in an application for the rehearing of a cause, and in which the court was charged by Woolley, an attorney therein, with not having fairly examined the cause which they had decided adversely to his client. In discussing the limitation of the statute upon the powers of the court in such cases, Judge Lindsay, in delivering the opinion, says: "The right of self-preservation is an inherent right in the courts. It is not derived from the legislature, and cannot be made to depend upon the legislative will. The power of the legislative department to interfere with the manner in which the judicial department. shall protect itself against insults and indignities, is denied by the Supreme Court of Arkansas (*State* v. *Morrell*, 16 Ark., 384), and doubted by the Supreme Court of the United States. *Ex parte Robinson*, 19 Wallace, 510."

This doctrine, which we regard with decided approval, is also declared in the case of *The People* v. *Wilson*, 64 Ill., 195, where it is held that "the power to punish for contempt is an incident to all courts of justice, independent of statutory provisions," citing numerous authorities, and drawing the same inference from the opinion of Mr. Justice Breese in *Stuart* v. *the People*, *supra*, in declaring that the statute "affirms a principle inherent in a court of justice to defend itself when attacked, as the individual man has a right to do for his own preservation."

It is, perhaps, unnecessary here to lay down *in extenso* the common law definitions of a contempt of court; the general doctrine as announced by Mr. Bishop in his work upon Criminal Law (2 vol., Sec. 252), is, that "there is no exact rule to define these contempts; but any disorderly conduct calculated to interrupt the proceedings; any disrespect or insolent behavior to-

ward the judges presiding; any breach of order, decency, decorum, either by parties and persons connected with the tribunal, or by strangers present; or, *a fortiori*, any assault made in view of the court, is punishable in this summary way."

In *Charlton's case*, 2 Mylne & Craig, 316, it is said by the Lord Chancellor, "Every writing, letter or publication which has for its object to divert the course of justice, is a contempt of the court. * * * * Every insult offered to a judge in the exercise of the duties of his office is a contempt."

In the celebrated case of *Commonwealth* v. *Dandridge*, 2 Va. cases, 408, it is said, upon the authority of Blackstone and other sources of the common law, that "Every court of record has a right to punish contempt offered to it by fine and imprisonment. This power is given to the courts, not for the private advantage of the judges who sit in them, but to preserve to them that regard and respect which, without such authority, is entirely lost among the people, and, for this reason, the power results from the first principle of judicial establishment, and must be an inseparable attendant upon every such tribunal. * * * These contempts may be committed by speaking or writing contemptuously of the court or judges acting in their judicial capacity, or by saying or writing anything which is calculated to prejudice the public mind respecting any suit depending in court, or tending to scandalize the judge respecting his judicial acts or character."

Of the numerous errors assigned by the plaintiff, we need only notice those which are material to a proper review of the questions affecting the validity of the judgment.

The first five assignments go to the jurisdiction of the county court in the cause or matter pending at the time the contempt was committed. It is insisted by plaintiff, that the cause, if there was one pending, was pending in the district court; that it was *res judicata* in that court, and the order of the district court satisfied by reason of the agreement of "compromise" between Ernst and Hughes; that the judical power of the district court was attempted to be delegated to the county court in the premises, and that the county court was acting ministerially, and not judicially in seeking to carry out the finding and order of the district court, and that therefore, the contempt, if any was committted, was against the district court alone.

These propositions can scarcely be regarded as serious arguments; they are rather assumptions without valid foundation in law or fact. There can be no question as to the jurisdiction of the county court in the premises to complete the administration of the estate. The statutory proceedings and practice of such courts, respecting the disposition and settlement of estates, is so plain that we need not discuss its application to the case. The written "release" stipulated between Ernst and plaintiff in error, was a palpable subterfuge; bound no one, nor settled anything outside the approval and records of the county court, wherein the cause was then pending.

It is assigned for error that the court had no power to issue a citation, and that the non-appearance in answer thereto was no contempt. Ample power is given by section 2871 of the General Laws, to issue citations to compel parties to appear and answer under oath touching their possession of money or property belonging to the estate, when it shall appear by the oath of anyone interested, that any person has such moneys or property in possession, and on failure to comply with the order of the court, such person may be committed therefor. As to this prescribed manner of bringing to the knowledge of the court information respecting such possession of property of the estate, the statute is directory, and such knowledge when derived by the court, by authority of equal dignity with such affidavit, should be regarded as a sufficient warrant for the process of the court. In this case the court did not need information by the oath of any person, when the possession of money belonging to the estate was shown to be in possession of the plaintiff in error, by a judicial finding of the district court, and which had been certified to, and made a matter of record of the court issuing the citation. If by reason of sickness or other good cause plaintiff had been prevented from appearing to the citation, the court, upon a proper and respectful showing, should, and undoubtedly would, have given all necessary time and opportunity for compliance with the order. And in fact, the court in this case did continue the hearing one day after the return of the citation, for cause shown, yet plaintiff still refused to appear in person. Courts possess a wide latitude for the exercise of discretion in all such cases. Where a spirit of respect for the court exercising judicial authority, good faith and honest intent are shown by a party subject to

such authority, these circumstances are one guide in directing the exercise of judicial discretion, while a contrary state of facts is another guide pointing out a different course of action. In this case the judge of the county court is himself best qualified to judge whether the refusal to comply with the order of the court was intended as a contempt, or was in fact, a contempt of the judicial authority.

As to the matter contained in the papers filed, which were adjudged by the court below to be matter of contempt, they need no lengthy discussion, since they consist of language addressed to, and used of and concerning, the judge of the court, and in respect of his judicial acts.

*First*—As to the answer filed to the citation, the plaintiff in error directly charges the judge of the court wherein the cause was pending with colluding with the administrator and the attorney for the estate, for the purpose of "gaining an unjust and undue advantage" against the plaintiff in error, who was then a party defendant to the proceedings, as well as attorney for his co-defendants therein. The language employed can have but one meaning. It implies judicial corruption and unjust oppression on the part of the judge presiding. It comes within the definitions of disrespectful, contumacious, insolent and contemptuous language and behavior toward the court, or judge thereof, respecting his official conduct. It was in the face of the court, and warranted the judge in taking cognizance of it summarily, as though the words, instead of being written and read in court, had been spoken *in faciæ curiæ* by the plaintiff in error appearing in his proper person. And more, for the writing showed deliberation and intent.

*Second*—Regarding the language used in the application for a change of venue, it can only be considered as a flagrant and wanton repetition of the contempt by the answer. It is somewhat difficult to lay down any general rule as to how far a party or his attorney may go in setting out facts in support of an application for a change of venue, based upon allegations of the prejudice of the judge. Our law up to 1876 (see R. S., p. 634) provided, that "if either party in any civil cause    *    *    *    shall fear that he will not receive a fair trial in the court in which the action is pending, on account that the judge is interested, or prejudiced, *    *    *    or that the adverse party has an undue influence over

the minds of the inhabitants, * * * * or that the inhabitants of such county are prejudiced against the applicant, so that he cannot expect a fair trial, * * * such party may apply * * * by petition, * * * accompanied by an affidavit verifying the facts in the petition stated," etc. The statute of 1876 amended this, by requiring the petitioner for change of venue in any cause to "state and set forth in his petition the fact, or facts, on which his fear that he will not receive a fair trial in the court wherein the cause is pending may be founded," and requiring such petition to be supported by the affidavits "of three credible persons." Our present Code provision is identical with the old law, as it existed previous to 1876, except that it gives the judge to whom the petition is addressed discretion to allow or deny the application, as he may believe that the cause stated does or does not exist. Upon the law as it stands, notwithstanding the repeal of the act of 1876, we think it is contemplated that facts shall be stated and set forth sufficient to inform the judge of the nature of the causes and their alleged foundation, and this court has expressly so ruled in the case of *Christ* v. *the People*, 3 Colo., 394. To the same effect is the case of *ex parte Curtis*, 3 Minnesota, 274.

It is, however, easy to see that, when the application is based on the prejudice of the judge, much less detail of facts will generally, if not always, be necessary, than where the prejudice of the inhabitants of a whole county or district is averred. And the Illinois statute of 1874 requires that such facts be set out only when the prejudice of the inhabitants or the influence of the adverse party is made the ground of the application, while, in case of alleged prejudice of the judge, no facts are required to be stated. Puterbaugh's Pl. and Pr., C. L., p. 750.

As stated, however, we conceive that, in all cases necessary, material or pertinent facts should be set out; in case of the prejudice of the judge, his attention would thus be called to some circumstances which he may have forgotten, or of which he was entirely ignorant, but which the petitioner might conceive to be a cause of prejudice, and a sense of justice requires that he should not be baldly charged with prejudice against a suitor while left in surprise and wonderment at a cause he may not imagine, or may believe exists only in the imagination or wicked invention of the applicant, and without the necessary knowledge

upon which to act in the exercise of that discretion to allow or deny the charge, a right which is expressly given such judge by the Code provision.

While, then, facts are to be stated, they are not to be set out beyond what are necessary where they involve the judicial acts or character of the judge; and we may say that it would never be necessary to set out facts that would in themselves, or by the manner of stating them, be calculated to scandalize the court, or judge thereof, or bring them into public contempt.

A contempt consists as well in the manner as the matter of the person committing it; matters which, if true, would in their very nature be scandalous, may be presented, hinted at or brought to the attention of the court in so respectful a manner, that no judge would ever think to construe a contempt therefrom; while, on the other hand, it is easy to see, when under the guise and pretense of setting out privileged and necessary matters, circumstances are detailed, and scandalous and insulting charges and inuendoes are made and insinuated, upon pretended "information and belief," in a manner that bears the unmistakable ear-marks of malice and deliberate contempt.

These remarks, we think, will indicate sufficiently clear the path which each attorney is expected to advise and follow in choosing the language he employs in papers filed in court, as well as in speech addressed directly to the judge.

As a member of our "most ancient and honorable profession," as an officer of the court itself, and as an exemplar of the law-abiding citizen and gentleman, he must be his own intelligent judge of whether it is ever necessary to employ language or exhibit demeanor which a discriminating and upright judge would regard as a contempt.

It is further assigned for error, that the court rejected testimony offered to prove the truth of the matter charged in the writings.

After what we have already said, it is scarcely necessary to add that this assignment is untenable. No formal trial is had in such cases. Where the matter constituting an alleged contempt is brought to the knowledge of the court or judge by affidavit, as in case the contempt is committed not in presence of the court, the person so charged or informed against, when brought

before the court to answer, is interrogated, where there is a necessity for so doing, in order both to inform the court of the very truth of the matter, and to give the accused an opportunity to purge the contempt if he will, or can; but the proceeding is, in all cases, summary before the judge, or court, and without the intervention of a jury.   2 Bish. Cr. L., Sec. 269.

Nor is the contempt purged by an avowal that no contempt was intended.   The question of contempt does not depend on intention, although, where the contempt was intended, this is an aggravating feature, which goes to the gravamen of the offense.

Where a receiver had unlawfully appropriated money of the receivership, and was ordered to restore it, and, in his answer, stated that he had no intention to do wrong, but, by reason of poverty, was unable to make restitution, and was thereupon committed for contempt, it was held, *inter alia*, that a disclaimer of intention does not purge the contempt, nor does a restitution in such case; that the commitment was not alone to compel restitution, but to punish for the offense.

*Cartwright's case*, 114 Mass., 230, and to the same effect as to intention is the opinion in *Sturoc's case*, 48 N. H., 428.   *The People* v. *Wilson*, 64 Ill., 194.

In this last case, it is held that the construction and tendency of the published matter or act constituting the offense, as bearing on its character as a contempt, are matter of law for the court.

Words apparently scandalously or offensive, but susceptible of a different construction, may be explained by the speaker or writer, and he be relieved of the charge of contempt, on sworn disavowal of intent to commit it; but when the words are necessarily offensive and insulting, such disavowal, while it may excuse, cannot justify.   *In re Woolley, supra*.

In *Dandridge's case*, from which we have already quoted, the court say they cannot but feel it a delicate task to define and decide upon the extent of their own powers, "nor be ignorant that the judgment they are called upon to render may expose them, on the one hand, to the imputation of timidity and irresolution, or, on the other, to that of usurpation and tyranny."

\* \* \* \* "Courts, their officers and process, are shielded from invasion and insult, not from any imaginary sanctity in the institutions themselves, or the persons of those who compose them, but solely for the purpose of giving them their due weight

and authority, and to enable those who administer them to discharge their functions with fidelity and effect."

Much has been said at times in this country about the futility of attempting, by proceedings for contempt, to compel a respect for a court or judge, which is either not entitled to it, or is unable to create it by force of deserving conduct and character.

Such considerations would not be without force, were all men honest, intelligent, reasonable and appreciative; but, as was said by one of the most observant of jurists, to suppose that the personal character of the judge would be a sufficient guaranty against the stings of disappointed suitors, or the insolence of the haughty, the rash, the malicious and the contemptuous, would be to imagine a state of society in which none of these traits existed, or were possible, and which would render the office of a judge wholly unnecessary.

We have carefully considered this whole case, together with the briefs, arguments and citations of counsel, and are unable to find anything in the record of proceedings of the court below of which the plaintiff in error can rightfully complain.   He must accept the consequences which his own conduct directly invited.

*The judgment is affirmed.*

MR. JUSTICE BECK, having been judge of the district court wherein some of the proceedings involved in this case were had, did not participate in this decision.

---

# Judicial Decisions Construing the Civil Code.

### SECTION 11.

*Text:*   All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided in this act.

[Corresponding with Sec. 12 Parker's California Practice Act, Sec. 34 Kentucky and Ohio Codes, Sec. 117 New York Code.]

1.   *Who may be joined as plaintiffs.*   A bill in equity is not multifarious if there is a common liability in the defendants, and a common interest in the plaintiffs, or if the interests of the plaintiffs are the same, and the defendants have not a co-extensive common interest, but their interests are acquired under different instruments, from the same source of title.— *Wilson v. Castro*, 31 Cal., 420.