## BLOOM v. THE PEOPLE.

1. CONTEMPT—APPELLATE JURISDICTION.

The review of a conviction of contempt is limited to an investigation of the jurisdiction of the lower court.

2. SAME—CHANGE OF VENUE.

The defendant in a contempt proceeding has no right to a change of venue.

3. SAME—JURISDICTION.

If a contempt is charged by the initial pleading the court has jurisdiction of the subject-matter, and cannot be divested of it by a plea denying the contempt.

4. SAME.

Where the proceedings for contempt are based on the publication of contemptuous articles, a mere disclaimer by the defendant of improper motives is not conclusive, but the court must determine the intent by a proper interpretation of the language used.

5. SAME.

To publish of a judge that his decisions in pending cases are influenced by political or money considerations, is contemptuous.

6. SAME—PENALTY.

A contempt of court is punishable either by fine or imprisonment.

*Error to the District Court of Conejos County.*

To a judgment of the district court of Conejos county sentencing him to imprisonment in the county jail for a period of thirty days for a contempt of court, John H. Bloom prosecutes this writ of error. This proceeding, instituted by the district attorney in the name of the people of the state of Colorado, is founded upon an information verified by said officer. It charges that the defendant John H. Bloom wrote, published and circulated in different issues of his newspaper various false and defamatory articles impeaching the honor, integrity and purity of the district court of the twelfth judicial district of Colorado and the judge thereof, Hon. C. C. Holbrook, and tending to bring said court and judge into disrepute, and designed to impute to said judge unworthy motives and dishonorable conduct, and to destroy respect in

said court and in him, and to prejudice the rights of litigants in causes pending, when said articles were published, and thereafter to be brought, and to affect and influence his decisions in said causes, and to degrade the court and incite public contempt therefor and for said judge, and to hold them up to contumely and public opprobrium, and that said articles tended to impede and corrupt the administration of justice with reference to such causes in said court.

In response to the citation served upon him to show cause, the defendant Bloom appeared and first filed his verified petition, supported by the affidavits of two other persons, asking that the hearing in said cause be had before some other judge than Judge Holbrook on account of the prejudice of the latter against the petitioner personally. The petition was denied; to which ruling there seems to have been no exception saved.

The defendant then filed his sworn answer, in which he admitted that he was the owner of the newspaper, and that the articles in question were published and circulated, but denied that he wrote all of them, and denied substantially that there was any malice in said articles, or any intention or design in their publication to cast any reflection upon the court or judge, but, being opposed politically, these articles were written for the purpose of defeating said judge in case he should become a candidate for reëlection. Contained in this answer was a general demurrer upon the ground that the information did not set forth sufficient facts to constitute a contempt.

To the answer the district attorney filed a demurrer upon the ground that it was insufficient as a defense to the information. Upon a hearing the court overruled both the demurrer to the information and the demurrer to the answer. Thereupon, without any evidence being taken, the court, upon the pleadings, made special findings of facts, holding that the publications set forth in the information, designated respectively as one, five and fourteen, constituted construct-

ive contempt, and that a portion of the answer as filed by defendant constituted a direct contempt.

After the findings were announced by the court, the following, as appears from the bill of exceptions, took place :

" By Mr. Richardson (counsel for defendant) :—Now, I suppose, there is probably a phase of this case that would require a hearing.

" By the Court:—I don't see any phase of this case that would require a hearing.

" By Mr. Richardson :—Is there no issue of fact tendered between the answer and the complaint?

" By the Court:—Not in that which the court has seen fit to sustain.   The other the court has considered surplusage."

Immediately following, the court, upon the findings made, imposed sentence.

Mr. E. F. RICHARDSON, for plaintiff in error.

THE ATTORNEY GENERAL, Mr. F. P. SECOR and Mr. L. W. DOLLOFF, of counsel, for the People.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

Every legal proposition involved in this case has been determined against the plaintiff in error by previous decisions of this court.   It is *stare decisis* in this state that in the review of a judgment in a contempt case the only question that can be investigated is the jurisdiction of the lower court. *People v. District Court*, 6 Colo. 534; *Teller v. The People*, 7 Colo. 451; *Cooper v. The People*, 13 Colo. 337; *Thomas v. The People*, 14 Colo. 254; *Mullin v. The People*, 15 Colo. 437 ; *Wyatt v. The People*, 17 Colo. 252.   See notes to *Percival v. State*, 50 Am. St. Rep. 568.   See, also, *Burke v. Territory*, 2 Okla. 499.

The foregoing observation is pertinent because counsel for plaintiff in error has assigned and argued alleged errors entirely foreign to the subject of the court's jurisdiction, although, in his supplemental brief, he concedes that it is only

jurisdictional matters which we can consider. The filing of the petition asking for a hearing before another judge does not raise a jurisdictional question. In a contempt proceeding the defendant has no right to a change of venue, or, as expressed by counsel, to demand a hearing before another judge.

The only questions before us are, *first*, did the district court have jurisdiction of the person of the defendant and of the subject-matter? *second*, if so, was the jurisdiction subsequently lost by such material departure from the forms and procedure prescribed by law to be observed in such class of causes as to be in excess of its jurisdiction? *third*, did the court have the power to impose a sentence of imprisonment?

That jurisdiction of the person was obtained, is conceded. Whether there was jurisdiction of the subject-matter depends upon whether or not a contempt was charged. This must be ascertained solely from an examination of the verified information. Whether an indictment or an information in a criminal case charges an offense, or a complaint in a civil action states a cause of action, must be determined from the face of the initial pleading, and does not depend upon the nature of the plea interposed by the defendant in the former case, or upon his answer in the latter. The same principle is applicable in a contempt proceeding. In other words, if the information charges a contempt, jurisdiction to hear and determine the cause is not divested by a denial of the contempt, though the trial may disclose that a contempt was not committed. As the lower court disregarded all but three of the publications, it is only as to these three upon which defendant was held that any consideration is necessary, and of those only the first and the third will be noticed. They are as follows:

Publication 1: "Judge Holbrook is still advising with himself upon the case of *Zook v. Rio Grande County*. No decision in the case has been handed down yet.

"The next judge of the twelfth judicial district of the state of Colorado will not be a political judge, who will con-

sider the political effect of his decisions before rendering them."

Publication 3 : "Holbrook is the weakest and most unpopular man the republicans can possibly nominate for district judge. The story of the Empire Canal receivership and Captain Campbell's loan of $800 should haunt him as long as he lives."

That class of cases holding that, where the language employed is ambiguous, or the acts committed equivocal, and susceptible of two interpretations, one innocent and the other contemptuous, and the defendant in his answer avers that the former meaning was the correct one and denies that any contempt was intended, the information should thereupon be quashed and that the defendant is absolutely entitled to a discharge, is not authority in this state. In some of the cases mentioned where the language is susceptible, by fair construction, of only one meaning, and that contemptuous, a disavowal of wrong intent is no defense. *Cheadle v. State*, 110 Ind. 301. At least some of these decisions were apparently made in states where the appellate practice permits a review of the rulings of the lower court for mere error committed after jurisdiction attached. Besides this, the better doctrine is that the mere disclaimer by the defendant of improper motives is not conclusive ; but the court must determine the intent by a proper interpretation of the language used. *Hughes v. The People*, 5 Colo. 436, 453; *Cooper v. The People, supra; People v. Wilson*, 64 Ill. 195; *Henry v. Ellis*, 49 Iowa, 205 ; Rapalje on Contempts, sec. 121; *People v. Stapleton*, 18 Colo. 568.

For the purpose of determining whether or not the court obtained jurisdiction to hear and determine the controversy, we are not restricted merely to the bald statements contained in these publications. The case is not before us where an inspection of the language employed shows that by no possibility could a contempt have been committed, whatever had been the innuendo. In cases like the one at bar, we may examine not only the language of the alleged libel, but, in

connection therewith, the accompanying explanatory statements, to see if the pleading states sufficient facts to confer jurisdiction upon the court. Such jurisdiction, when attaching, may not be taken away by subsequent erroneous rulings upon the facts, for, in contempt cases, jurisdiction implies the power resting in the trial court conclusively and finally to decide, incorrectly as well as correctly, all matters of law and fact of a lower grade than jurisdiction itself.

However, as to the two publications herein above set out, we think, by a fair interpretation of the language, unaided by the innuendoes, the decision of the trial court upon the question of jurisdiction was correct. Tested by either or both of these rules, the articles were contemptuous. To publish of a judge that his decisions in a case pending are influenced by political or money considerations, certainly would tend to bring him into disrepute, and to embarrass him in future decisions in the case, and have a tendency to interfere with the due administration of justice therein.

We might stop here; but if, at defendant's solicitation, we should further pursue the inquiry and examine his answer, any lingering doubt, if such we entertained, of the correctness of our conclusion, based upon the information, would be dissipated. In the answer the publications were admitted, and, as to the first one, that the cause and the particular decision were still pending. There was a denial only of wrongful intent. The defendant then avers that the article was written "solely by reasons of complaints made to this defendant and conversations had in his presence by members of the bar of the twelfth judicial district, wherein they were complaining that it seemed impossible to get a decision, after a case was tried, until patience ceased to be a virtue, and when a decision was rendered it was of such a character that in many instances it was impossible for them (the attorneys) to tell whether they had won or lost." The answer concludes with this language:

" This defendant further avers, that not only attorneys, but many of the general public, for a long time prior to the elec-

tion mentioned in said information, were constantly and commonly charging that the decisions of the court were rendered on that side of a cause where the political interests of the judge of said court were supposed to lie. This defendant says, that as to whether there were any truths in said charges, it was, of course, impossible for any one but said judge to know positively, but this defendant deemed it a proper matter for publication in a newspaper which was opposed to said judge politically, as the said newspaper of this defendant was."

The information charges that, in making the third publication, the defendant intended to convey to his readers that, in a case then pending in the court in which a receiver had theretofore been appointed, the judge had been guilty of corrupt conduct in the appointment of the receiver, which "should haunt him as long as he lives;" and, further, that the said judge had received from Captain Campbell money for corrupt purposes. The answer which the defendant makes to this allegation in the information is as follows:

"That the fourteenth publication complained of had reference solely to the candidature of the said C. C. Holbrook, and matters which were fully done and completed. The reference to the Empire Canal receivership referred to the appointment of the receiver, which was fully made and completed long prior to the time that the said publication took place.

"The reference to the Captain Campbell loan was purely a personal matter and referred to no case at all, and if it did, it was to no cause then pending before said court or the judge thereof."

While the act of appointing a receiver was a past act, yet the cause in which it was done was pending; it was not fully determined. Even the matter of the appointment was still before the court, and orders of the court in reference thereto were subject to review, and the receiver's acts, and the approval or disapproval of his reports, were still to be passed upon by the court. Hence the cause was still pending,

and the case is brought within the doctrine to which some of the authorities have restricted it. *In re Chadwick* (Mich.), 67 N. W. Rep. 1071.

To the concluding portion of the information which charges specifically that the meaning of the language, and the corrupt and improper intent with which the publications were made were such as constituted contempts, the only reply made by the defendant in his answer is that the allegations are so vague, unintelligible and uncertain that they are not sufficient in law to put the defendant upon his answer.

The fact that the defendant denies generally that he was actuated by malice and denies any intention to cast any reflection upon the judge, must be taken in connection with the language which we have quoted. This certainly is most insulting to the judge in the presence of the court itself. To any fair and candid mind it must be evident that, in making these publications, the defendant's object was to insult the court and to degrade the judge in the eyes of the community. They naturally tended to impede the due administration of justice in impending causes. They conclusively establish that defendant was guilty of constructive contempt.

The unnecessary and wholly uncalled for attempted explanation of the reasons that actuated him in making the publication, tended to scandalize and insult the judge, and was a direct contempt for which summary punishment might be inflicted. Indeed, upon an examination, not only of the information, but particularly of the defendant's own answer, we are satisfied that he intended to convey, and did convey, the meaning, and to accomplish the object, charged against him in the information, and we do not understand that he very seriously otherwise contends.

The next question is whether, in the proceedings below, there was such a radical departure from the forms prescribed by law to be observed in the trial of such cases as to divest the court of jurisdiction. The only ground upon which any such claim is based is that the court declined to hear evidence upon the controverted matters. After the court an-

nounced its findings of fact (which, incorrectly, counsel for plaintiff in error says were made upon a demurrer, but which were properly based upon allegations in the information relating to the publications in question and admitted in the answer), counsel for the defendant suggested that there might be a necessity for a hearing. To this suggestion the court replied that there was no controversy as to the publications which he had adjudged to be contemptuous. So far as the record discloses, this reply was satisfactory to the defendant, for his counsel did not then ask the privilege of introducing evidence, or intimate that he desired any further hearing. This is further manifest from the fact that no ruling by the court was made refusing an application to be heard, nor was any exception taken to what was supposed to be such a ruling of the court. In matters of this sort the proceedings are summary in their nature. The defendant availed himself of the right to a hearing by filing an answer. There were not only admissions therein, but affirmative matters, which clearly showed him guilty of contempt. Upon his own showing, made under oath, the case against him was established. No evidence was necessary. The failure to hear evidence, which, under the facts of this case, was altogether superfluous, we do not consider to be such a departure from the regular procedure as to constitute further action in imposing sentence as in excess of the court's jurisdiction.

The remaining question concerns the power of the court to imprison the defendant. Counsel for plaintiff in error insists that, under sections 329, 330 and 334 of the Civil Code, the only punishment for this character of offense is by fine, and that no imprisonment is permitted. The procedure adopted in this case is sanctioned by the doctrine announced in the *Wyatt Case*, *supra*, and, under the same authority, the contempt charged here is in the nature of a criminal contempt. The fact that, in the *Wyatt Case*, the contempt arose out of an investigation by the grand jury of a criminal cause, does not differentiate that case from this, where the charge of contempt is one affecting the dignity

and authority of the judge of a court.   Under both or either
of these cases the court has the common law power to pun-
ish for contempt by imprisonment, as well as by fine; yet,
if this proceeding had been conducted under the provisions
of the code, and they were applicable, we are of opinion that
a fair construction of the code provisions would still give to
the court the power to imprison, as well as to fine.

Our conclusion upon the whole case is, that in making
the first and third publications and in inserting in his answer
the language quoted, the defendant was guilty, as to the
two former, of constructive contempts, and, as to the latter,
of a direct contempt.   The publications were sufficiently
charged in the information to confer jurisdiction, and it is
conceded that the court had jurisdiction of the direct con-
tempt.   When these facts are determined, the limit of our
review is reached.   It follows that the judgment of the dis-
trict court must be affirmed.

*Affirmed.*