## No. 17,011.

WALLACE, DIRECTOR OF PUBLIC WELFARE *v.*
COUNTY COURT OF GARFIELD COUNTY, ET AL.
(261 P. [2d] 504)

Decided August 31, 1953.    Rehearing denied September 28, 1953.

Messrs. ADAMS, HECKMAN & TRAYLOR, Mr. GERALD J. ASHBY, for plaintiff in error.

Mr. GEORGE J. PETRE, Mr. ROBERT S. ZIMMERMAN, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

AN unusual contempt proceeding is before us for review. The record as presented reveals a situation pregnant with emotions and supposed authority taken too seriously, as well as the questionable position of the prosecutor of the complaint. By the record as made, it is definitely a charge of criminal contempt out of the actual presence of the court in session. The order for the citation and the judgment upon the hearing supports this distinction as against that of civil contempt.

The attorney who filed the motion for citation supported by his affidavit ran the entire gamut of positions as counsel in the matters culminating in this proceeding. First as private attorney for one of the parents of the children involved, then as county attorney for Garfield county, he appears as counsel for the court and as prosecuting attorney, then as principal witness for the trial court, and he cross-examined his own witness with a threat of impeachment as to one witness. This seemed to meet the approval of the trial court, which apparently took its position too seriously, and used its power unsparingly to punish, "in order to vindicate the dignity of this court," as stated in the order of the citation, when there was no imminent threat to the administration of justice.

In April of 1947 on proceedings had, a former judge of the county court of Garfield county adjudged Anita Louise Pechnick and Carol Pechnick, children of the

county, to be dependent and neglected children and directed that the custody thereof remain in the mother under certain conditions. One of the children, Carol Pechnick, is the daughter of Carl Pechnick and the other child, Anita Louise, is not the child of Carl Pechnick. A final decree of divorce between the Pechnicks was entered September 10, 1947 in Mesa county, by which the court awarded the custody of both children to the mother, who in 1948, remarried and established a residence in Mesa county. The children were generally under the child welfare department of Mesa county of which the respondent, plaintiff in error, was director. The children were attending school in one of the districts of Mesa county.

About four years later in January of 1952, the county court of Garfield county—the court involved in this contempt proceeding—entered an ex parte order granting temporary custody of Carol to her father, and temporary custody of Anita to her aunt, Louise Simonson. In possession of this order, the attorney, who later became the petitioner herein, took a copy of this ex parte order and accompanied Mr. Pechnick and Mrs. Simonson to Grand Junction where they called at the school to get the children. It is alleged that the school authorities refused to let them see or have the children, under some direction from the child welfare department of Mesa county, unless the parties desiring to see or have the children, presented a valid order from the Mesa county court.

On February 8, 1952, the attorney thus involved caused the citation for contempt herein to issue from the county court of Garfield county against the respondent Wallace, alleging that he had impeded the due administration of law and interfered with the process of the court in that he had counseled the school authorities to disobey any order; that he had advised the petitioner that the county court of Garfield county had no jurisdiction or authority to enter an order concerning custody of the minor children; that the county judge of Garfield county

had neither the authority nor wisdom to enter such an order; and that he would not obey such order. On February 11, 1952, respondent Wallace petitioned the county court of Mesa county to have the children declared dependent and neglected and their custody remanded to the Mesa county department of public welfare. A second citation against respondent was issued February 23, 1952 upon recital in the affidavit supporting the same that respondent had brought the above mentioned dependency proceedings in Mesa county.

Answer was filed by respondent to the first citation, but none to the second. At a pretrial conference in the county court of Garfield county on June 25, 1952, portions of respondent's answer to the first citation were stricken. This action of the court was clearly erroneous, as we will later discuss. Trial was had to the court, which made its findings that respondent was guilty of contempt under both citations and was fined $250.00 under the first and $500.00 under the second citation, together with the costs of the proceedings and an additional sum of $150.00 was assessed against respondent for attorney's fee for filing and prosecuting the action. To the judgment entered on these findings, error is assigned.

Narrowed to the material circumstances of the case, we find from the record that the ex parte order which counsel obtained for the custody of the children in the Garfield county court, and which he had in his possession when he accompanied the father and an aunt to the Mesa county schools for the children, was not displayed to anyone then or after, much less to the respondent who was nowhere near. It also appears that respondent, being charged with responsibility concerning the welfare of the children, after four years and more of inaction on the part of the Garfield county court or its authorities, did telephone the county judge of Garfield county, the court now involved, and indulged in some criticism of the court and its actions concerning the chil-

dren and possibly displayed a failing temper under the conditions. That counsel, either as private counsel, county attorney, or district attorney, not being successful in his efforts to obtain possession or custody of the children under the ex parte order, apparently, in some spirit of vindictiveness, filed his motion for citation, supporting it by his affidavit based entirely on hearsay, and the citation was issued.

Respondent, zealous in the performance of his duty, and faced with the responsibility of children; and the case concerning them apparently closed, or, at least, inactive for four or five years; and believing that the ex parte order obtained in Garfield county was not a valid order, filed petition for dependency in Mesa county. Thereupon, the second citation for contempt was issued, based solely on this latter action of respondent.

It is to be noted that in the affidavit for the first citation no mention was made of any contemptuous acts of respondent through his telephone conversation with the court; and in the trial on the issues made for the first citation, we find petitioner's own witnesses denying any direct connection with respondent Wallace in the matter, and refuting any implication on his part. Aggravated by this situation, counsel was allowed to cross-examine, to no avail, his own witnesses with a threat of impeachment. To add to the mockery of a trial, the trial court proceeded to examine respondent concerning the matter of the telephone conversation which had been overheard, and testified to, by one of petitioner's witnesses, and was, more or less, a denial of the court's position and statement relative thereto; however, shocking as it may appear, we note the findings of the trial court are founded largely, if not wholly, upon the testimony of the petitioner and counsel, which was based on hearsay in the first instance, and generally denied by the parties involved, and no doubt the finding of guilt is engendered by a spirit of ill feeling and based largely upon the court's version of the telephone conversation

in which, as we read from the sketch thereof, there is nothing that would in and of itself be contemptuous or an imminent threat to judicial proceedings. It is pertinent at this point to mention that while the law makes ample provision for a notice to respondent as to what charges he is to meet, he had no notice whatever in the affidavit for the first citation that the matter of the telephone conversation with the court was involved, therefore the error is plain in the court proceeding as it did without notice or advance warning to respondent and leaving him in the position of being deprived of cross-examination on this subject when he was ambushed by the court.

██ At the outset we said this was criminal contempt, because made so by the order for citation. Proceedings for criminal contempt are to preserve the power and vindicate the dignity of the court and to punish for disobedience of its orders. Civil contempt proceedings are to preserve and enforce the rights of private parties to litigation and to compel obedience to the orders made for the benefit of litigants. The latter is civil and remedial. The former is criminal and punitive in nature and the only parties interested are the government, the courts and the people.

██ By the very nature of the circumstances and the record made thereon, we see nothing actually contemptuous on the part of respondent when no order claimed to be violated or frustrated was directed to him. At least, the record does not support any proof of any guilt of contemptuous acts beyond a reasonable doubt, which is necessary in prosecutions for criminal contempt. This court in an early decision held, "A contempt which disregards the court or obstructs the administration of justice is a criminal contempt." *Wyatt v. People,* 17 Colo. 252, 28 Pac. 961, approved in *Lindsey v. People,* 66 Colo. 343, 181 Pac. 531.

We said earlier in this opinion that it was error for the trial court to strike that part of respondent's answer

in which he set up all of the facts and history leading up to the incidents here involved, which, if they were not sufficient in the way of defense, they at least would be considered by the court in mitigation of any punishment that might be administered to the contemnor. This apparently was not considered, but was entirely overlooked in an innate desire to punish, as is evidenced by the exorbitant nature of the fines imposed, which were solely to preserve the dignity of the court and not to make injured parties to the litigation whole. Such an impulse appears to have influenced the mind of the court to personal vindication instead of the true consideration as to whether or not justice was obstructed. Courts are allowed, if they so choose, to act as ordinary sensible persons. There is not such a halo around the heads of judges that the constitutional right of freedom of speech is barred, if only in an expression of difference with the court's viewpoint or honest and fair criticism of its judgment.

As to the second citation which involved only the matter of respondent's filing a petition for dependency in the Mesa county court when he knew of the existence of the Garfield county order. The first Garfield county court order in 1947 certainly was not followed with due diligence and regard for the welfare of the children when it was permitted to lie dormant between four and five years without any apparent inquiry or effort to ascertain the welfare of the children or their whereabouts, and in addition to all of that, the district court of Mesa county had decreed the custody of the children to the mother then in Mesa county, and at this late date, in 1952, when an indifferent father saw fit to attempt to regain the custody of one of the children, he attempted to do so by the means here employed through an ex parte order, which at once brought the question of jurisdiction already being exercised by the Mesa county authorities, into focus. It was so uncertain in the mind of counsel for the father and those interested in the

prosecution of this proceeding that a habeas corpus proceeding was instituted in Mesa county district court to determine the jurisdiction. This case, of course, was properly dismissed. If respondent, feeling the full force of the responsibility of dependent and neglected children in his county, displayed such an interest by attempting to have the jurisdiction of the children finally and properly determined, he cannot be criticised, much less be charged with contempt of a court long derelict in the follow-up of its orders. The attempt thus made by respondent to have the problem of jurisdiction resolved smacks of diligence in the performance of his duties instead of contempt. This may not have been the proper remedy or procedure; however, mistake as to procedure is not contemptuous. The parties interested having failed to have an antiquated order or an invalid ex parte order enforced, could easily have tested all questions involved by action in the Mesa county case or proceedings to have the Mesa county court order set aside.

■■■ Since respondent is to be relieved, there is but little reason to discuss the exorbitancy of the fines imposed, except as a sidelight in support of our opinion. Under this light we perceive clear and unmistakable animosity on the part of the trial court throughout the hearing, and it is evidenced by the resultant fines. In addition thereto, the court has not shown any authority that it had in this criminal contempt proceeding to assess an attorney's fee for the benefit of private counsel, county attorney, district attorney, or counsel for the court as defendant in error, in whatever capacity he elected to serve.

The judgment of the trial court is reversed and the cause remanded with directions to dismiss the contempt proceedings and that the court costs of respondent in all proceedings be taxed against the petitioner and the defendant in error.

MR. JUSTICE CLARK not participating.