## WYATT v. THE PEOPLE, EX REL.

1. GRAND JURY—DISOBEDIENCE OF ITS PROCESS.—The grand jury is an adjunct or appendage to the court. But it has no power to adjudge contempts or to punish the same. In the absence of statute, a disobedience of its process or defiance of its authority should be reported to the court for an order in the premises. It is the disobedience of this order that then constitutes the contempt.
2. ORDER OF COURT TO INSPECT PROPERTY OF STATE.—A grand jury investigating a criminal charge connected with property of the state

in the custody of the secretary of state may inspect such property. But an order of court should first be obtained and the directions, if any, given in the order must be carefully obeyed. The granting or refusing of permission to make such an inspection is a matter within the sound discretion of the court.

3. CONTEMPT PROCEEDINGS FOR OBSTRUCTING INSPECTION.—An affidavit for contempt in obstructing such action of a grand jury, which fails to show that the grand jury obtained permission of the court to inspect the property, or that an order of court was made commanding defendant to permit such inspection, or that defendant disobeyed this order, does not state a cause of action.

4. JUDGMENT ON PLEADINGS—JURISDICTIONAL DEFECT.—Where judgment is rendered upon the pleadings, and no order of court or its disobedience is alleged or admitted in the pleadings, the declaration in the judgment that such an order was made and disobeyed does not cure the jurisdictional defect.

5. CONSTRUCTION OF STATUTE.—The statutory provision that judgment in contempt proceedings shall be "final and conclusive" simply declares a principle of the common law. This principle forbids the review of such judgments on the ground of mere error; but an appellate court may set the judgment aside if the court below is without jurisdiction, and also where the judgment pronounced is wholly unauthorized.

6. QUESTION OF JURISDICTION RAISED BY WRIT OF ERROR.—Where imprisonment is being suffered under a judgment for contempt, *habeas corpus* is the usual proceeding for inquiry into the question of jurisdiction. But this question may be raised in the supreme court by writ of error.

7. WHAT CONTEMPTS OF COURT, CIVIL, AND WHAT, CRIMINAL.—Contempts of court are *civil, i. e.,* where they consist in the disobedience of some judicial order entered for the benefit or advantage of another party to the proceeding; *criminal, i. e.,* acts disrespectful to the court or its process, or obstructing the administration of justice, or tending to bring the court into disrepute.

8. APPLICATION OF STATUTES TO DIFFERENT CLASSES.—Under the constitution the civil code is by its title limited to procedure in civil cases. The provision of this code limiting the penalty for contempt to "fine or imprisonment" is therefore not applicable to criminal cases. Such cases are governed by the common law, and a judgment of *both fine and imprisonment* in a criminal contempt is valid.

9. SUMMARY PROCEEDINGS TO PUNISH CONTEMPTS.—The power to punish contempts is inherent in courts. Summary proceedings for contempts without indictment or trial by jury have always been recognized. The constitution was not intended to change the practice in this respect. Such summary proceedings are therefore not

inconsistent with the constitutional guarantees relating to criminal prosecutions.

10. WHEN DISOBEDIENCE OF ORDER A CRIMINAL CONTEMPT.—The refusal to obey an order of court made in connection with the investigation of a criminal charge by a grand jury is a criminal, not a civil contempt.

11. LEGISLATIVE AUTHORITY TO REGULATE PROCEEDINGS.—The legislature cannot take away from courts created by the constitution the power to punish contempts. But reasonable regulations by that body, touching the exercise of this power, are binding.

12. CONSTRUCTIVE CONTEMPT—MANNER OF PROCEEDING.—A *constructive* contempt must be brought to the court's attention by affidavit. This affidavit must state facts which, if established, would constitute a contempt. And if it does not do so the court is without jurisdiction to proceed. This rule now prevails both at common law and under the statute.

13. ORDERS OF COURT TO RECITE THE FACTS.—Whether or not the common law requires that the orders of court in *actual* contempts shall recite the facts, a due regard for the rights of the accused strongly sanctions such practice.

*Error to Criminal Court of Arapahoe County.*

In July, 1889, the secretary of state being absent, the duties of the position devolved upon plaintiff in error, Wyatt, who was his deputy. By virtue of law the control of the legislative halls and the custody of the legislative furniture and other state property therein was held by the secretary of state. The grand jury of the criminal court of Arapahoe county, the county in which were situate the office of the secretary of state, the legislative halls and the state property in question, demanded of Wyatt admission to these halls for the purpose of inspecting this property. The demand was refused, and thereupon the following affidavit was filed:—

"S. S. Abbott, first being duly sworn deposes and says: That he is a deputy district attorney within and for said county and state, and that as such he was before the grand jury of the criminal court of said county and state, on the first and second days of July, A. D. 1889, and that on the said first day of July the said Wyatt was subpœnaed before the said grand jury and ordered to bring with him the keys

of the room and building, wherein the furniture used by the general assembly of the state of Colorado during the session of A. D. 1889, was stored.

" That the said Wyatt came before the said grand jury as required, but failed and refused to deliver up said keys, and failed and refused to allow on demand thereof by the foreman of said grand jury, to conduct the said grand jury to the said room and building or in any way to allow the said grand jury to inspect said furniture. That on the following, or second day of July, A. D. 1889, the said grand jury called upon the said Wyatt at his office, at the office of the secretary of state of the state of Colorado, and then and there the foreman of the said grand jury demanded of the said Wyatt that he admit the said grand jury to said room and building to inspect the furniture therein contained; which the said Wyatt then and there refused to do. And the deponent herein further alleges that the said Wyatt was then and there the deputy secretary of state of the state of Colorado, and was then and there the custodian of the said room and building and of the keys to the same and that through him alone could the said grand jury gain a quiet and orderly access to the room and building.

" S. S. ABBOTT.

" Subscribed and sworn to before me this second day of July, A. D. 1889.

| ( Criminal Court Seal )  | " WILSON D. REID, Clerk. |
| ( Arapahoe County. )  | " By F. L. BISHOP, Deputy." |

An attachment for contempt issued, a motion to quash was made and overruled, and an answer was filed. Upon the pleadings the court found Wyatt guilty of contempt and pronounced judgment against him. Thereupon at his request, the present writ of error issued and was by order made a *supersedeas*. Other matters essential to a correct understanding of the opinion sufficiently appear therein.

Messrs. WOLCOTT & VAILE, Mr. GEORGE W. EASLEY,

Mr. A. M. STEVENSON, and Mr. H. RIDDELL, for plaintiff in error.

Mr. SAM'L W. JONES, attorney general, Mr. J. H. MAUPIN, attorney general, Mr. H. B. BABB and Mr. ISAAC N. STEVENS, for defendant in error.

MR. JUSTICE HELM delivered the opinion of the court.

Statutes such as section 334 of the Civil Code declaring that the judgment in contempt proceedings shall be "final and conclusive" simply express a principle of the common law.    This principle is decisive against the right of review on the ground of mere error in the trial.    It does not however preclude inquiry into the question of jurisdiction.    If as a matter of fact the act complained of constituted no contempt, the court is without jurisdiction to find the party guilty, and its judgment will be set aside by the proper appellate tribunal.    A like result also follows when, though the act may have been a contempt yet the judgment pronounced is wholly unauthorized.    Rapalje on Contempts, sec. 155; *Cooper v. The People*, 13 Colo. 337 ; *Thomas v. The People*, 14 Colo. 254; *Ex parte Grace*, 12 Iowa, 208.

Where imprisonment is being suffered, *habeas corpus* is the usual procedure for inquiry into the question of jurisdiction.

And in *Butler v. The People*, 2 Colo. 295, a doubt was expressed concerning the power to investigate contempts by writ of error.    But the latter method of procedure possesses decided advantages over the former, and jurisdiction in cases pending on error for review is always a pertinent inquiry.    In *Cooper v. The People*, *supra*, the subject was carefully considered and the writ of error sustained.    The practice has been recognized in a number of other cases and may now be regarded as firmly established in this state.    *Hughes v. The People*, 5 Colo. 436 ; *Thomas v. The People*, *supra* ; *Mullin v. The People*, 15 Colo. 437.    But whether the judgment in contempts be examined upon *habeas corpus* or by writ of

error, the inquiry is always limited to the single question of jurisdiction, and all other matters are carefully excluded.

The jurisdiction of the court below in the case at bar is challenged upon both of the grounds above mentioned.

Counsel for plaintiff in error strenuously contend, *first*, that no contempt was committed; and *second*, that the judgment had there been a contempt, was unwarranted by law. ·

We proceed to consider these jurisdictional objections, reversing, however, in the discussion the order of their statement above.

Wyatt was sentenced to both fine and imprisonment, the imprisonment not being conditional upon payment of the fine. But section 334 of the Civil Code, *supra*, limits the penalty to fine *or* imprisonment, forbidding the infliction of both as substantive punishments in the same case. It is conceded that we have no other statute upon the subject, and if the code provision be applicable, the court clearly exceeded its jurisdiction in pronouncing judgment. It was upon this ground that the *supersedeas* was allowed when the writ of error issued.

The statute in question, as indicated, is a part of the Civil Code. This act is by its title expressly limited to procedure in civil actions. The inhibition of section 21, art. 5 of the constitution against embodying in acts subjects not clearly expressed by the title, forbids legislation in this act relating to criminal offenses or procedure. If, therefore, Wyatt's alleged contempt be criminal, the provision in question is not applicable, and the judgment before us is valid since it would have been proper at the common law. 4 Black. Com. ch. 20.

In *New Orleans v. Steamship Co.*, 20 Wall. 387, it is declared without qualification that "contempt of court is a specific criminal offense;" and that the judgment therein is "a judgment in a criminal case." This court in *Teller v. The People*, 7 Colo. 451, asserted that "the imposition of fines and penalties in contempt proceedings pertains to criminal and not to civil jurisprudence." And numerous cases may be found containing unqualified declarations of similar

import.  Other opinions there are which, like that in *Welch v. Barber*, 52 Conn. 147, on the contrary clearly indicate that many of these proceedings are civil and not criminal.  But while the apparent conflict of views cannot in all cases be reconciled, much of the inconsistency disappears if contempts be regarded as civil or criminal according to their nature and effect.  This distinction is substantially recognized by Sir William Blackstone, and may now be regarded as grafted upon the ancient law touching these offenses.  Mr. Rapalje, in his work on Contempts at sec. 21, gives the best general definitions relating thereto we have found.  He says : " Civil contempts are those *quasi* contempts which consist in failing to do something which the contemnor is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court ; while criminal contempts are all those acts in disrespect of the court or its process, or which obstruct the administration of justice, or tend to bring the court into disrepute."  To the former class of contempts belong such acts as the disobedience of an injunction issued at the suit of a private party ; incidentally, the court may vindicate its authority, but the individual alone is interested in the enforcement of the order and usually institutes the contempt proceeding ; formerly, the process whereby courts of chancery enforced all their decrees was in form and in name an attachment for contempt.  To the latter class of contempts belong such acts as misconduct by attorneys or other officers, disobedience of subpœnaes or other process, disturbances or insolent behavior in the presence or immediate vicinity of the court, and the like.  4 Blackstone's Com., chap. 20, *supra ; Phillips v. Welch,* 11 Nevada, 187 ; *Welch v. Barber, supra ; Crook v. The People,* 16 Ills. 534 ; *Ex parte Hardy,* 68 Ala. 303 (dissenting opinion by Brickell, C. J.) ; *In re Watson,* 3 Lang. (N. Y.) 408 ; *Hawley v. Bennett,* 4 Paige, 163.

The foregoing classification is not affected by the fact that the procedure is in most instances substantially the same whether the contempt be civil or criminal.  Nor is the char-

acter of the contempt in this regard controlled by the character of the court in which it occurs. For centuries courts clothed with civil jurisdiction only, have investigated and punished those contempts which are classified as criminal. It is to be observed also that the nature of the pending proceeding (as to whether it be civil or criminal), does not necessarily determine the nature in this particular of the contempt.

In regarding a large proportion of the contempts of court as constituting criminal offenses, we do not decide that the summary proceeding by attachment is unconstitutional. It is true that section 8 of the Bill of Rights, after providing that felonies shall be proceeded against by indictment, declares that "in all other cases offenses shall be prosecuted criminally by indictment or information." And sections 16 and 23 of the same article guarantee a trial by jury in criminal prosecutions. But these constitutional provisions do not relate to contempt proceedings. Nor is the summary manner of punishing contempts inimical to section 25 of the Bill of Rights, which says that no one shall be deprived of "liberty" without "due process of law."

The power to punish contempts is universally recognized as inherent in all superior courts, and this power is now generally accorded to inferior courts as well. The exercise of this power by summary attachment proceedings is as old as the common law; it antedates in the common law all constitutions and all statutes, even that of Magna Charta. Mr. Blackstone says: "We find it actually exercised as early as the annals of our law extend, and though a very learned author seems inclinable to derive this process from the statute of Westm. 2, 13 Ed. I, c. 39, * * * yet he afterwards more justly concludes, that it is a part of *the law of the land;* and, as such, is *confirmed* by the statute of Magna Charta." Book 4, Hammond's Blackstone's Com., p. 365. Both the right to punish contempts and the power to proceed in a summary manner are essential to the performance of the very functions for which courts are created. The learned author just men-

tioned declares that they "result from the first principles of judicial establishments, and must be an inseparable attendant upon every superior tribunal." But if the proceeeding for contempt could only be instituted by indictment or information, and if the accused were entitled to a trial by jury, it is obvious that great difficulty and delay would be occasioned in the transaction of ordinary judicial business, and the wise purpose of the power would in many instances be defeated.

The framers of our constitution never intended to thus interfere with the due and orderly administration of justice. It was not their purpose to have the procedure designated in the sections mentioned cover contempts of court, and thus give this class of offenses a *status* theretofore unknown in either the statutory or the common law. The constitutional guaranties apply to such acts as constitute violations of public and general laws. They leave contempts, which are simply acts in disobedience of judicial mandates or process or which tend to obstruct the dignified and effective administration of justice, to be dealt with in the summary manner theretofore universally followed. Upon this question, a few of the numerous authorities are subjoined: Rapalje on Contempts, secs. 10 and 112; 2 Bishop Crim. Law., sec. 268; Cooley's Const. Lim., p. 390, note 3; *Cooper v. The People, supra; State v. Becht,* 23 Minn. 411; *Ex parte Grace, supra; Gandy v. The State,* 13 Neb. 445; *Arnold v. Commonwealth,* 80 Ky. 300; *Neel v. State,* 9 Ark. 259; *State v. Matthews,* 37 N. H. 450.

The contempt charged in the present case did not consist in disobedience of some writ or order for the benefit of a private litigant. Refusal to obey a command by the grand jury is the act averred, and the contempt, if a contempt there be, is therefore criminal. It follows that the judgment pronounced was controlled by the common law, not by the code provision. We do not accept the suggestion that courts under like circumstances will, in criminal offenses of this kind, adopt by analogy the penalty provided by statute for civil contempts. The judgment being valid, we must decide this

branch of the question presented, against plaintiff in error, and contrary to our own preconceived impressions.

It cannot be denied that there has been a seeming inconsistency in the practice of our courts whereby acts recognized in *Teller v. The People, supra,* as criminal have been adjudicated under a chapter relating exclusively to civil cases. But the foregoing conclusions justify this practice as to civil contempts and vindicate the usefulness of the statute in question. For though the legislature cannot take away from courts created by the constitution the power to punish contempts, reasonable regulations by that body touching the exercise of this power will be regarded as binding. Hence, the code chapter is undoubtedly valid as to all civil contempts.

We turn now to the second branch of the case. Did the acts with which Wyatt is charged constitute a contempt of court?

Constructive contempts—those not committed in the presence of the court—must of course in some regular and legitimate way be brought to the court's knowledge; until this is done the process of attachment will not issue. In Pennsylvania it is held that "obstructing a magistrate in the execution of his office in an indictable offense." *Bowker v. Commonwealth,* 12 S. & R. 175. And in *Gandy v. The State, supra,* it is said that such proceedings must be commenced by a sworn information. But the practice generally recognized throughout the United States, and according to Blackstone frequently followed in England, is for some proper official or interested party to set forth by *affidavit* the material facts relied on. A little contrariety of opinion exists as to whether the warrant of commitment or the order of court must recite the jurisdictional facts. But the overwhelming weight of authority in this country sustains the proposition that the affidavit upon which the proceeding for a constructive contempt is based must state facts which, if established, would constitute the offense; and that if the allegations of the affidavit are not sufficient in this respect, the court is without jurisdiction to proceed. Rapalje on Con-

tempts, secs. 93, 94, and cases cited: *Mullin v. The People, supra; Thomas v. The People, supra; Cooper v. The People, supra; Wilson v. The Territory,* 1 Wyo. 155; *Ex parte Peck,* 3 Blatch. (C. C.) 113; *McConnell v. The State,* 46 Ind. 98; *Phillips v. Welch,* 12 Nev. 158; *Gandy v. The State, supra; Batchelder v. Moore,* 43 *Cala.* 412. Some of the opinions above cited refer the authority for the affidavit to statutes similar to section 322 of our Civil Code. But the statute mentioned and others of like tenor are simply declaratory in this particular of what may fairly be termed the modern common law practice. And the rule concerning the materiality of the affidavit should prevail to the same extent in the absence of statute.

There is now and then a case, like that of *Ex parte Summers,* 5 Iredell, 149, which seems to hold that in courts of superior jurisdiction the record need not disclose the grounds upon which the contempt is adjudged. But in *Ex parte Summers* an actual, not a constructive, contempt was under consideration, and reliance was placed mainly upon English decisions; besides, the justice of having these grounds thus appear is considered and the practice strongly commended. The position of those authorities which hold that where the contempt is constructive the affidavit must show the offense, commends itself with irresistible force. A proper regard for the liberty of the citizen forbids the arrest of parties upon criminal attachment charged with this kind of contempts, without information under oath touching the precise character of the alleged offenses.

While the grand jury in its deliberations acts to some extent independently of the court, it is unquestionably an adjunct or appendage thereto. It has no power to adjudge contempts or to punish the same. The usual mode of procedure where witnesses refuse to testify, or the legitimate action of the body is obstructed, is, unless otherwise provided by statute, to report the matter to the court and obtain an order in the premises; and it is the disobedience of this order that constitutes the contempt.

In the case at bar the alleged misconduct of Wyatt was brought to the knowledge of the court through an affidavit filed by the assistant prosecuting attorney. And the subsequent proceedings rest entirely upon that instrument as a foundation. But it is strenuously urged that this affidavit utterly fails to show any contempt on the part of Wyatt. We must therefore examine its contents. But a preliminary consideration first requires attention.

We are told that grand juries cannot inspect premises or property wherein or in connection with which a crime is alleged to have been committed. The proposition is not without force when the action is sought to be taken in connection with private premises, or as to personal property of non-consenting private individuals. The official deliberations of the grand jury take place in the room or quarters provided for the purpose. Its action almost always rests upon the testimony of witnesses and papers and documents produced before it in response to subpœnas. It is very rare indeed that it desires as a body to examine the *situs* of an alleged criminal offense. And it is exceedingly difficult to find judicial declarations either admitting or denying its power of inspection in the absence of statute. But cases may arise wherein such inspections would greatly assist its investigations, and we are not prepared to deny the authority of courts to permit them under proper limitations. Some analogy may be said to exist in this regard between the action of grand and petit jurors, though the larger powers and greater independence of the former render this analogy imperfect. Inspection by the latter during the progress of trials, under proper circumstances and limitations, is now frequently permitted in civil cases, and the authority therefor is often declared by statute.

But we are strongly of the opinion that the grand jury has no more right to visit premises for the purpose of official inspection upon its own motion than the petit jury. Such proceedings being unusu l and extraordinary must, unless otherwise provided by statute, first have the sanction of the

court. And as a matter of course there must be a careful compliance with the limitations and regulations prescribed in the order.

The crime under investigation by the grand jury and thus connected with the case at bar, involved property belonging to the state. And in our judgment the state through its regularly authorized tribunal had the undoubted right to inquire into the circumstances relating thereto. The premises to which entrance was sought (the legislative halls) belonged to the state. Wyatt as the deputy secretary of state was simply the custodian for the state of these premises and the state's property therein. He had no private interest or ownership in the property, nor would admission to the legislative halls have been in any sense an invasion of his private premises. The fact that the secretary had given a bond and was required to account faithfully to the state in the end for his stewardship is of little significance. This bond might prove worthless or insufficient protection. But be that as it may, the protection thus given does not militate against the right to investigate a criminal offense against state property, and subject the guilty party to punishment as provided by law.

Without intimating any conclusion concerning the legality or propriety of an order by the court commanding admission of a grand jury into the premises of a private citizen or the inspection of personal property belonging to a private citizen and in his custody, we do not hesitate to say in the case at bar: *First*, that the alleged crime involving property belonging to the state was a proper subject for investigation by the grand jury, and the court possessed authority to aid by legitimate orders the prosecution of such inquiry; *second*, that if necessary to a complete investigation, an inspection by the grand jury under an order of court of the furniture in the legislative halls was permissible; and *third*, that it was for the court, in the exercise of a sound discretion, to determine the existence or non-existence of this necessity, and to grant or deny the order accordingly.

We are equally certain, however, of the correctness of the proposition already in effect suggested, that the grand jury had no authority whatever to demand an inspection of the premises or property upon its own motion. An order of court was an essential condition precedent. Wyatt could not be in contempt for disobeying a command which the grand jury had no right to give or power to enforce. It was essential, therefore, to the cause of action against him that the affidavit presented as its foundation should show both the existence of such an order of court and his disobedience thereof. But the affidavit before us is silent in these respects. It does not show that the grand jury obtained permission of the court to inspect the property, or that any order whatever was entered by the court commanding Wyatt to permit such inspection. Nor does it state any fact tending to show that Wyatt ever disobeyed an order of court. It does not specify the nature or grade of the offense under investigation by the grand jury, or even assert that the inspection was sought in connection with a criminal charge. For aught appearing in this affidavit, the grand jurors might have been endeavoring to view the property for the purpose of gratifying their idle curiosity. It is impossible to read the instrument without receiving the impression that its author regarded Wyatt's refusal to obey the demands of the foreman as constituting a contempt subjecting him to punishment by the court.

It is not necessary to consider whether this jurisdictional defect could be waived, or could be cured by answer or other subsequent proceeding; for certain it is that such waiver or correction did not here take place. The judgment, it is true, says that an order of court was disobeyed, and also that the grand jury was investigating a criminal offense. But this judgment was rendered upon the pleadings wherein no such order or its disobedience was alleged or admitted.

The motion to quash the attachment expressly specified as a distinct ground that "a view and inspection of said property by said grand jury has never been ordered by this

court or any other court of competent jurisdiction, and such view and inspection is beyond the power and jurisdiction of said grand jury." This motion being overruled, Wyatt filed an answer which averred, *inter alia*, that the grand jury had never been directed by the court to inspect the property, and without such direction or order possessed no jurisdiction to do so. Also, that the grand jury was not considering any charge warranting investigation, and that the attachment proceeding was not based upon any official action of that body in reporting facts to the court. Nowhere in the motion to quash or in the answer do we find any admission that an order of court in the premises was made or disobeyed. There is absolutely nothing in the record, save the judgment, intimating the existence of this order. To say that such recitals in the judgment are sufficient, would be to nullify all attempts by appellate tribunals to inquire into the jurisdiction of the court pronouncing the same. It would be to make that court the sole arbiter as to what does or does not constitute a contempt, and render the judgment itself conclusive of this jurisdictional question.

It will be observed that the present opinion intimates no view touching the right of a grand jury under an order of court, in the absence of statute, to examine public records, documents or papers in the custody or under the control of designated officials. And we must not be understood as encouraging the annoyance in this way of official custodians of other state property upon light or trivial pretexts. In this, as in many other instances, we must presume that the discretionary power lodged in the courts will be sparingly, cautiously and judiciously exercised.

This opinion deals with an alleged constructive contempt. In view of its bearing upon the contempt chapter in the Civil Code, we deem it proper, however, to add a word with reference to " actual " contempts—those committed in the presence of the court. Whether the common law requires that the orders of court in this class of contempts shall recite the facts, it would obviously be improper for us now to deter-

mine.   But whatever may be the common law rule, a due regard for the rights of the accused strongly sanctions the propriety of such a course, and the proceeding would certainly not be vitiated thereby.   We suggest the wisdom of a substantial compliance with the provision in this respect of section 322 of the Civil Code, though the contempt be criminal and therefore not within its purview.   *In re Summers, supra.*

In view of the foregoing conclusions, we must hold that a contempt was not shown in the present case, and hence that the judgment of the criminal court was entered without jurisdiction and is void.