The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

John A. BARRON, Defendant-Appellee.

No. 81SA483.

Supreme Court of Colorado,
En Banc.

March 12, 1984.

Steven R. Polidori, Sp. Prosecutor for the Second Judicial Dist., Denver, for plaintiff-appellant.

Larry Steven Pozner, P.C., Denver, for defendant-appellee.

ERICKSON, Chief Justice.

The prosecution has appealed an order which dismissed an information charging the defendant, John A. Barron, with criminal contempt. We reverse and remand for further proceedings consistent with this opinion.

I.

John A. Barron was a bailiff sworn to take charge of a sequestered jury in the murder trial of Lewis Roger Moore. As bailiff, he took an oath to keep from the jury all newspapers, television programs, and any other materials which might bear in any way upon the jurors' independent assessment of the particular facts in the case. He also swore that he would not discuss the case with the jurors and was ordered to monitor the jurors' telephone conversations.

On the second day of trial, a juror told Judge Sparr, the trial judge, that during the previous evening, the bailiff discussed the case with several members of the jury. Judge Sparr then questioned each juror in his chambers and concluded that the bailiff told five jurors in his custody that Moore became a paraplegic as a result of a knife

fight at the penitentiary in Canon City. Jurors who were interviewed by Judge Sparr told him that the bailiff had not monitored their telephone calls or restricted their access to newspapers or television.

On his own motion, over objections of both the defense and the prosecution, Judge Sparr declared a mistrial and caused a special prosecutor to review the allegations against the bailiff. On March 13, 1981, Judge Plank granted the prosecution leave to file an information.[1] Judge Plank thereafter recused himself and the case was transferred to Judge Rothenberg.

At the preliminary hearing on June 24, 1981, Judge Rothenberg found that there was probable cause for further prosecution. The defendant was then arraigned and entered a plea of not guilty. On July 8, 1981, the defendant filed a motion to dismiss, alleging: "The court lacks criminal jurisdiction over this matter, as the information fails to charge an act forbidden by law."

On September 15, 1981, Judge Rothenberg granted the defendant's motion to dismiss because there was no jurisdiction "to proceed under the crime of common law contempt as it is presented to the Court."

## II.

The issue is whether the trial court was without jurisdiction because the contempt proceeding was initiated by information. We conclude that the court did have jurisdiction and erred in dismissing this case.

 Criminal contempt consists of conduct that obstructs the administration of justice or tends to bring the court into disrepute. *E.g., Losavio, Jr. v. District Court,* 182 Colo. 180, 512 P.2d 266 (1973); *Wyatt v. People,* 17 Colo. 252, 28 P. 961 (1892). The power to punish for criminal contempt is an inherent and indispensable power of the court and exists independently of legislative authorization.[2] *Austin v. City & County of Denver,* 156 Colo. 180, 397 P.2d 743 (1964); *Allen v. Bailey,* 91 Colo. 260, 14 P.2d 1087 (1932); *People ex rel. Attorney General v. News-Times Publishing Co.,* 35 Colo. 253, 84 P. 912 (1906), writ of error *dismissed sub nom. Patterson v. Colorado,* 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed.2d 879 (1907). In *Wyatt v. People, supra,* this court traced the origin of common law contempt and noted that the framers of the Colorado Constitution did not intend to extend all the constitutional protections applicable to criminal prosecutions, Colo. Const. art. II, §§ 8, 16, and 23, to criminal contempts:

"The framers of our constitution never intended to thus interfere with the due and orderly administration of justice. It

1. It is not clear from the record whether Judge Plank suggested that the special prosecutor file an information charging criminal contempt, or whether the special prosecutor concluded that an information was the proper way to proceed in this case.

2. In *Austin v. City & County of Denver, supra,* we declared:

"The power to punish for contempt, as a punitive measure or to coerce obedience, is an inherent and indispensable power of the courts. Such power is not derived from the Legislature and cannot be made to depend upon the legislative will."

156 Colo. at 184, 397 P.2d at 745; *see also Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Allen v. Bailey,* 91 Colo. 260, 14 P.2d 1087 (1932); *People ex rel. Attorney General v. News-Times Publishing Co.,* 35 Colo. 253, 84 P. 912 (1906); writ of error *dismissed sub nom. Patterson v. Colorado,* 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed. 879 (1907); *Wyatt v. People,*

17 Colo. 252, 28 P. 961 (1892); *Hughes v. People,* 5 Colo. 436 (1880).

The contemnor's conduct is not the differentiating factor in determining whether the contempt is civil or criminal. The primary consideration is the purpose and character of the sanctions imposed against the contemnor. *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); *Latrobe Steel Co. v. United Steelworkers,* 545 F.2d 1336 (3d Cir. 1976). Civil contempt proceedings are remedial and are not intended as a deterrent to offenses against the public. *Nye v. United States,* 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941); *see also Penfield Co. of Cal. v. S.E.C.,* 330 U.S. 585, 67 S.Ct. 918, 91 L.Ed. 1117 (1947). Criminal contempt is prosecuted to preserve the power and vindicate the dignity of the court by punishing the contemnor. *Wright v. People,* 31 Colo. 461, 73 P. 869 (1903); *Wyatt v. People,* 17 Colo. 252, 28 P. 961 (1892).

was not their purpose to have the procedure designated in the sections mentioned cover contempts of court, and thus give this class of offenses a *status* theretofore unknown in either the statutory or the common law. The constitutional guaranties apply to such acts as constitute violations of public and general laws. They leave contempts which are simply acts in disobedience of judicial mandates or process, or which tend to obstruct the dignified and effective administration of justice, to be dealt with in the summary manner theretofore universally followed."

17 Colo. at 260, 28 P. at 963 (emphasis in original). We emphasized in *Austin v. City & County of Denver, supra,* the flexibility of procedures for prosecuting criminal contempt, and said:

"Although there is no fixed procedural formula for contempt proceedings, so that technical nicety is not required, *Schwartz v. United States,* 217 Fed. 866, courts should improvise a procedure which accords with due process of law. 'No person shall be deprived of life, liberty or property, without due process of law.' Art. II, Sec. 25, Constitution of Colorado."

156 Colo. at 184, 397 P.2d at 746. For example, criminal contempt proceedings have been conducted under the provisions of C.R.C.P. 107 which provide in pertinent part:[3]

"(a) *Definition.* Misbehavior of any person in the presence of the court, ... or misbehavior so near thereto as to obstruct the administration of justice, misbehavior of any officer of the court in his official transactions and disobedience or resistance of any person to or interference with any lawful writ, process, order,

rule, decree, or command of said court or any act or omission designated as contempt by the statutes or these rules shall constitute contempt.

. . . .

"(c) *Out of the Presence of the Court.* When it appears to the court by motion supported by affidavit that a contempt has been committed out of the presence of the court, it may ex parte order a citation to issue to the person *so charged to appear and show cause at a time designated why he should not be punished therefor.* The citation and a copy of the motion and affidavit shall be served upon such person a reasonable time before the time designated...."

(Emphasis supplied.)

■ Although the Colorado General Assembly in 1971 abolished all common law crimes in Colorado, it reserved to the courts the power to punish contempt by enacting section 18–1–104(3), C.R.S.1973 (1978 Repl.Vol. 8), which provides:

"Common-law crimes are abolished and no conduct shall constitute an offense unless it is described as an offense in this code or in another statute of this state, *but this provision does not affect the power of a court to punish for contempt,* or to employ any sanction authorized by law for the enforcement of an order lawfully entered, or a civil judgment or decree; nor does it affect the use of case law as an interpretive aid in the construction of the provisions of this code."

(Emphasis supplied.) Under our prior decisions, the court's jurisdiction in this case is not dependent upon the particular form of the charging document, but rather on whether the contents of the charging docu-

---

**3.** A show cause order was the procedure used to formulate the criminal contempt issued in *Lobb v. Hodges,* 641 P.2d 310 (Colo.App.1982); *In Re P.R. v. District Court,* 637 P.2d 346 (Colo.1981); *Harthun v. District Court,* 178 Colo. 118, 495 P.2d 539 (1972); *Robran v. People,* 173 Colo. 378, 479 P.2d 976 (1971); *Smith, District Attorney v. District Court,* 150 Colo. 136, 371 P.2d 271 (1962); *Mainland v. People,* 111 Colo. 198, 139 P.2d 366 (1943).

Crim.P. 57(b) provides:
"If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these Rules of Criminal Procedure and shall look to the Rules of Civil Procedure and to the applicable law if no Rule of Criminal Procedure exists."

ment provided adequate notice of the charge and an opportunity for the defendant to be heard in a manner comporting with basic due process.

### III.

In this case the defendant was charged with criminal contempt committed out of the presence of the court. The district attorney, with the permission of the court, filed a properly verified information. Essentially, the prosecution alleged in an information that between February 10 and February 12, 1982, at Denver, Colorado, the defendant unlawfully and knowingly violated the oath of jury bailiff "by discussing possible evidence and other matters relative to the case with members of the [sequestered] jury," "by making available newspapers for reading and television for viewing by sequestered jury members," and by failing "to monitor all telephone conversations by members of the sequestered jury." The contempt charges in the information were sufficient and did not deprive the defendant of his right to due process of law. U.S. Const., amend. XIV, and Colo. Const. art. II, § 25.

The procedure followed by the prosecution provided the defendant with greater procedural safeguards than those contemplated by C.R.C.P. 107 and, for that matter, by any of our prior cases.[4] *See, e.g., People ex rel. Attorney General v. News-Times Publishing Co., supra; Wyatt v. People, supra.* Based upon the rationale of our prior cases, the trial court was not deprived of jurisdiction merely because

the contempt charge was initiated by the filing of a verified information rather than by the citation procedure, although the citation procedure under C.R.C.P. 107 would have been a better practice.

Accordingly, we reverse the judgment of dismissal and remand the case to the district court with directions to reinstate the information and for further proceedings consistent with this opinion.

NEIGHBORS, J., dissents.

NEIGHBORS, Justice, dissenting.

I agree with the court's conclusion that there was no crime of criminal contempt at common law. However, I disagree that the prosecution for the alleged contempt committed in this case was properly initiated by an information, and therefore, I respectfully dissent.

The issue squarely presented in this case is whether criminal contempt proceedings may be initiated by the filing of an information. I recognize that earlier decisions of this court permitted such actions to be initiated by the filing of an information. *People ex rel. Attorney General v. News-Times Publishing Co.,* 35 Colo. 253, 84 P. 912 (1906), writ of error *dismissed sub nom. Patterson v. Colorado,* 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed.2d 879 (1907); *Bloom v. People,* 23 Colo. 416, 48 P. 519 (1897). However, these cases are no longer controlling.

We now have comprehensive statutes and rules of procedure which govern the use of "informations" and the conduct of

---

**4.** This court stated in *Austin v. City & County of Denver, supra:*

"Essential to due process in contempt proceedings is the right of one to know that the purpose of a hearing is the ascertainment of whether he is guilty of contempt. *Federal Trade Comm. v. A. McLean & Son,* 94 F.2d 802 [ (7th Cir.1938) ]; *McCann v. New York Stock Exch.,* 80 F.2d 211 [ (2nd Cir.1935) ]; *Dept. of Health v. Roselle,* 34 N.J. 331, 169 A.2d 153; *State ex rel. Rodd v. Verage,* 177 Wis. 295, 187 N.W. 830, 23 A.L.R. 491."
156 Colo. at 184, 397 P.2d at 746
When an indirect criminal contempt has been charged "the [defendant] is entitled to notice of the charge, the right to be represented by counsel at the hearing, the right to call and confront witnesses, the right to an adjudication by the court, and, in the absence of an overriding and

compelling interest, the right to have the hearing conducted in open court." *P.R. v. District Court,* 637 P.2d 346, 350–51 (Colo.1981) (citation omitted); *see also In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). Criminal contempts with an authorized sentence of more than six months are considered serious crimes and those with a possible sentence of six months or less are classified as petty offenses. *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); *Frank v. United States,* 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969). A defendant charged with contempt is entitled to a jury trial when imprisonment may be for more than six months. *Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

civil and criminal proceedings. Utilizing an information to prosecute an alleged contemnor for criminal contempt is not authorized by any statute or rule of procedure. Indeed, the reverse is true. Section 16–5–101(1), C.R.S.1973 (1978 Repl.Vol. 8), governs the commencement of a criminal prosecution. The statute provides in pertinent part:

> "(1) Unless otherwise provided by law, a criminal action for violation of any statute may be commenced in one of the following ways:
>
> . . . .
>
> "(b) By the filing of an information in the district court; . . ."

Section 16–5–202(1), C.R.S.1973 (1978 Repl. Vol. 8), sets forth the requisites of an information. The statute provides:

> "(1) The information is sufficient if it can be understood therefrom:
>
> "(a) That it is presented by the person authorized by law to prosecute the offense;
>
> . . . .
>
> "(c) That the offense was committed within the jurisdiction of the court, or is triable therein;
>
> "(d) That the offense charged is set forth with such degree of certainty that the court may pronounce judgment upon a conviction."

From these statutory provisions we learn that an information may be filed to commence a criminal action for an offense which consists of the violation of any criminal statute. Section 18–1–104(1), C.R.S. 1973 (1978 Repl.Vol. 8), defines offense as follows:

> "The terms 'offense' and 'crime' are synonymous and mean a violation of, or conduct defined by, any state statute for which a fine or imprisonment may be imposed."

*See also* Crim.P. 7(b) which contains similar provisions relating to the information. Under the present statutory scheme and Rules of Criminal Procedure, an information may be used only to initiate the prosecution of a crime. The majority has correctly concluded that criminal contempt is not a crime.

The majority does not address the issue of how a document which may only be used to initiate the prosecution of criminal cases can be used to begin proceedings against a person for conduct not amounting to a crime. The court merely concludes that it is the content of the document rather than the form which is controlling. If the argument in this case was limited to a claim by the alleged contemnor that the information was defective because it violated his due process rights, I would agree. However, both the legislature, by enacting the Code of Criminal Procedure and this court, in adopting Rules of Criminal Procedure, have attached very specific definitions and requirements to the word "information."

Crim.P. 57(b) provides as follows:

> "If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these Rules of Criminal Procedure and shall look to the Rules of Civil Procedure and to the applicable law if no Rule of Criminal Procedure exists."

Since there is no rule governing contempt in the criminal rules, C.R.C.P. 107 sets forth the only procedure authorized to be used in criminal contempt proceedings. We impliedly recognized the exclusivity of C.R.C.P. 107 in *People v. Lucero,* 196 Colo. 276, 280, 584 P.2d 1208, 1211 (1978), when we stated:

> "The court's authority to punish for contempt of court a witness who disobeys an order to testify issued under section 13–90–118, C.R.S.1973, cannot be seriously questioned. The civil contempt provisions of the Colorado Rules of Civil Procedure, particularly Rule 107(a), expressly provide that 'disobedience . . . of any person to . . . any lawful . . . command of said court . . . shall constitute contempt.' "

Rather than ending the hopeless confusion over whether criminal contempt proceedings are governed by C.R.C.P. 107, the court perpetuates the uncertainty by its decision today permitting the use of both an information and a C.R.C.P. 107 citation in such cases. We will next be faced with

determining, in a series of cases, whether an alleged contemnor is entitled to the full panoply of rights enumerated in the constitution, statutes, and rules of procedure which are available to criminally accused persons who are charged with criminal contempt by an information. No useful purpose will be served by such an exercise. Moreover, the existence of alternative procedures which may be employed to prosecute criminal contempt raises serious equal protection issues. Where one alleged contemnor is prosecuted by an information and is or may be entitled to greater procedural and substantive rights than a person against whom contempt proceedings are initiated under C.R.C.P. 107, litigation involving equal protection arguments is sure to follow. In *Lucero*, 196 Colo. 276, 584 P.2d 1208, we held that the procedure authorized by C.R.C.P. 107, which had been utilized in that case, complied fully with the requirements of constitutional due process. I would put an end to the uncertainty and hold that C.R.C.P. 107 provides the exclusive means of punishing criminal contempt under the presently existing statutes and rules which quite clearly dictate such a result. The trial court correctly ruled it lacked jurisdiction to proceed and I would affirm the order of dismissal.