The PEOPLE of the State of
Colorado, Complainant,

v.

Peter S. RAZATOS,
Attorney-Respondent.

No. 80SA249.

Supreme Court of Colorado,
En Banc.

May 20, 1985.

Linda Donnelly, Disciplinary Prosecutor, Philip A. Harley, Deputy Disciplinary Prosecutor, George S. Meyer, Deputy Disciplinary Prosecutor, Denver, for complainant.

Tallmadge, Tallmadge, Wallace & Hahn, P.C., John W. Smith, III, Harvey P. Wallace, Denver, for attorney-respondent.

LOHR, Justice.

On September 16, 1983, we issued a rule to show cause why the respondent should not be held in contempt of court for failing to pay restitution and court costs previously ordered by this court and for representing that the court costs had been paid when they had not. We now conclude that we cannot impose contempt sanctions against the respondent on the record before us. Therefore, we discharge the rule.

## I.

On June 22, 1981, this court suspended respondent Peter S. Razatos from the practice of law for three years and ordered him to pay restitution of $2,500 to a former client and to pay court costs of $692.65. *People v. Razatos,* 636 P.2d 666, 672 (Colo. 1981). The facts and procedural history leading up to that disciplinary action are set forth in the published opinion and will not be repeated here.

On September 13, 1983, the People filed a Motion for Contempt Citation against Razatos, alleging that he had failed to pay the restitution and court costs previously ordered and that he had misrepresented that the costs had been paid.

Based upon the People's motion, this court, on September 15, 1983, issued an order to show cause that stated:

IT IS THIS DAY ORDERED that a rule to show cause issue out of this court commanding the respondent to answer in writing and show cause within ten (10) days from service of such rule why he should not be held in contempt of Court for disregarding the Court's order to pay restitution and costs and for misrepresenting to the Court that he had paid the court ordered costs.

A rule to show cause was issued to Razatos the following day, containing the language prescribed by the order.

On December 15, 1983, after Razatos filed a response to the rule to show cause, the court referred this matter to a special master. *See* C.R.C.P. 53. The master was directed "to determine whether the Respondent has the ability to pay the restitution previously ordered." The allegations concerning court costs were not mentioned in the referral to the master. The master was further directed to hold a hearing and "determine all questions of fact and file a written report."

The appointed master then set March 29, 1984, for a hearing. Prior to the hearing, on March 2, the master issued an order declaring that it was necessary for him "to have full and complete information concerning Respondent's financial condition" from June 22, 1981, the date of our opinion imposing the requirement to pay restitution and costs, to the date of hearing. Razatos was directed to produce the following documents and information:

a. Copies of Respondent's Federal and State income tax returns for 1980, 1981, 1982, and 1983. If the 1983 returns are not yet complete, he is directed to furnish the Court with a verified statement of all income showing amounts and source, received in 1983 and to date, in 1984.

b. A verified statement of all assets owned by Respondent in which he had any interest, as of June 22, 1981, and a statement of all liabilities as of that date.

c. A verified statement of all assets, real, personal or mixed, owned by Respondent, or in which Respondent had any interest, whether acquired or transferred during the period June 22, 1981, to

date of the scheduled hearing. Respondent may, if so advised, present to this Court a verified statement of any cause or reason he may claim rendering him unable to comply with the Court's prior order. This order is entered on the Court's own motion.

At the hearing before the master on March 29, 1984, Razatos' former client testified that the restitution ordered by the court had not been paid. The People then called Razatos to testify as an adverse witness and asked him to produce the documents ordered by the master on March 2. Razatos responded by filing with the master a "Hearing Certificate," in which Razatos contended that the order directing him to produce the financial information was in violation of his privilege against self-incrimination guaranteed by the United States and Colorado Constitutions. Stating that his actions were taken "[n]otwithstanding the objections to the compulsion being exercised here," Razatos attached to the certificate the following financial material in partial compliance with the order of the master:

A. 1980 Income Tax Return;

B. 1981 Income Tax Return;

C. 1982 Income Tax Return;

D. 1983 Income Tax Return;

E. Report from Bell Credit Reporting, Inc. regarding outstanding judgments against the Respondent as of March 21, 1984;

F. Note from Peter G. Razatos dated June 15, 1980 payable to M. Grant and assigned to Respondent on June 15, 1980;

G. Financial Statement.

Razatos then refused to answer any questions concerning his financial status.

The master found that the exercise of the privilege was "without merit" under the circumstances and ordered Razatos to testify, threatening him with the imposition of contempt sanctions if he continued to refuse. When Razatos persisted in his refusal, the master found him in contempt and ordered him to jail until such time as he should purge himself of contempt by complying with the master's order to testify.

On March 30, upon the respondent's motion, this court ordered him released upon his own recognizance and directed the People to show cause why the master's contempt order should not be vacated. The People responded by acknowledging that the master had no authority to adjudicate the respondent to be in contempt. The People noted that the master instead could simply make factual findings and refer the matter to this court to determine whether the facts found by the master constitute contempt. The contempt order was vacated by this court on May 3, 1984, and the matter was returned to the master.

A further hearing was held before the master on June 12, 1984. The People again called Razatos to the stand as an adverse witness. Notwithstanding another order from the master, Razatos once more refused to answer questions concerning his financial condition.

On June 18, 1984, the master issued his findings. The master found that Razatos' refusal to testify, based on the assertion of his privilege against self-incrimination, was unjustified; that Razatos' continued refusal to testify after being ordered to do so by the master constituted contempt committed in the presence of the court; that if the master was without authority to determine contempt, the findings were submitted to the court for such determination; and that the limited financial evidence in the record was sufficient to establish that "at all times since the entry of the Supreme Court's order for restitution ..., [Razatos] has been financially able to, and capable of, complying with the Court's order." Razatos filed objections to the findings of the master in this court, and the People filed a reply to those objections.

After reviewing the entire record, including the findings, objections and reply, we conclude: (1) While the evidence in the record may be sufficient to indicate that Razatos had the ability to pay the ordered restitution during the period from June 22,

1981, into 1983, the evidence is insufficient to support the finding by the master that Razatos had the ability to pay such restitution at the time of the hearing. For that reason, this court is unable to enter a finding of contempt and impose *remedial* contempt sanctions on Razatos for failure to pay the ordered restitution. (2) While the evidence in the record might be sufficient to support the imposition of *punitive* contempt sanctions against Razatos for a failure to pay restitution over the prior three years when he was able to do so, no foundation for the imposition of such punitive sanctions is provided by the rule to show cause, the order appointing the master, or the hearing provided to Razatos. (3) Razatos' exercise of the privilege against self-incrimination was valid. Therefore, his refusal to testify when so ordered by the master did not constitute an act of contempt. Based on these conclusions, we hold that Razatos' objections to the master's findings are well taken, and that the rule must be discharged.

We consider first whether the record would support the imposition of either remedial or punitive sanctions for Razatos' failure to pay restitution as ordered by this court. We then address whether Razatos' assertion of the privilege against self-incrimination was valid, and whether contempt sanctions can be imposed for his refusal to answer questions as ordered by the master notwithstanding the claim of privilege.

## II.

■ Contempt of court can be divided into two categories, civil and criminal, dependent on the purpose and character of the sanctions sought to be imposed. *People v. Barron*, 677 P.2d 1370, 1372 n. 2 (Colo.1984). Civil contempt proceedings

are remedial in nature and are not intended to punish the contemner or to deter offenses against the public. *Id.* In contrast, criminal contempt proceedings are designed to preserve the power and vindicate the dignity of the court by imposing punishment on the contemner. *Id.*

■ The power to punish for criminal contempt is an inherent and indispensable power of the court and exists independent of legislative authority, *id.*, at 1372, although criminal contempt is not a common law or statutory crime, *id.*, at 1373. Procedures for prosecuting criminal contempt charges are set forth in C.R.C.P. 107(b) (contempt committed in the presence of the court) and C.R.C.P. 107(c) (contempt committed outside the presence of the court).[1]

■ Courts also have the inherent and indispensable power to impose the remedial contempt sanction of imprisonment to compel performance of an act within the power of the contemner. *People v. Barron*, 677 P.2d at 1372 n. 2. The procedures of C.R.C.P. 107 are applicable to remedial contempt proceedings. C.R.C.P. 107(c), (d). Where such relief is sought, an adjunct criminal contempt sanction of fine or imprisonment is available to vindicate the dignity of the court if the contempt citation so states. C.R.C.P. 107(d).

■ In all proceedings for contempt committed out of the presence of the court, the alleged contemner must be given notice of the purpose of the hearing, including the nature of the acts of contempt that he is alleged to have committed. *P.R. v. District Court*, 637 P.2d 346, 350 (Colo.1981); *Wright v. District Court*, 192 Colo. 553, 555, 561 P.2d 15, 16–17 (1977); *Ealy v. District Court*, 189 Colo. 308, 310, 539 P.2d 1244, 1245–46 (1975); *Austin v. City & County of Denver*, 156 Colo. 180, 184–85,

---

1. We recognize that C.R.C.P. 107 is entitled "Civil Contempt" and that subsection (e) of the rule could be interpreted to imply that criminal contempt proceedings are not governed by C.R.C.P. 107. Yet, the title of the rule is not fully descriptive of the rule's content, for C.R.C.P. 107 clearly includes a definition encompassing, and procedures governing, both civil and criminal

contempt, as those terms are defined in *People v. Barron*, 677 P.2d 1370, 1372 n. 2 (Colo.1984). *See* C.R.C.P. 107(a), (d). A proper interpretation of C.R.C.P. 107(e) is that the procedures for prosecuting criminal contempt set forth in C.R.C.P. 107 are not exclusive, that criminal contempt charges can also be initiated by direct criminal information. *See People v. Barron.*

397 P.2d 743, 746 (1964). A remedial contempt order must be supported by findings of fact establishing that the court's order has not been complied with *and* that the alleged contemner has the present ability to comply. *Wright v. District Court*, 192 Colo. at 555, 561 P.2d at 17; *Marshall v. Marshall*, 191 Colo. 165, 167, 551 P.2d 709, 710 (1976); *Murley v. Murley*, 124 Colo. 581, 584, 239 P.2d 706, 708 (1951). In order to support a contempt order imposed to punish, the court must find noncompliance with the court's order *and* that such conduct is offensive to the authority and dignity of the court. *Lobb v. Hodges*, 641 P.2d 310, 311 (Colo.App.1982); *Marshall v. Marshall*, 35 Colo.App. 442, 445, 536 P.2d 845, 848 (1975), *affirmed in part and reversed in part on other grounds*, 191 Colo. 165, 551 P.2d 709 (1976).

■■■ The record in this case will not support a remedial contempt order because it does not establish that Razatos had the ability to pay the ordered restitution at the time of the hearing before the master. We reach this conclusion fully cognizant of the requirement that we must accept the master's findings of fact unless clearly erroneous. *See* C.R.C.P. 53(e)(2).

■■ Based on the only hard evidence of Razatos' financial condition in the record—his tax returns for 1981–83—the master found that Razatos was financially able to comply with the order of restitution "at all times since the entry of the Supreme Court's order." The most that can be said for Razatos' tax returns is that they indicate that he had the ability to pay restitution as late as 1983; they say nothing about his ability to pay on March 29, 1984 (the date of the first hearing), or at any time since. The other financial information supplied by Razatos casts no light on his ability to pay subsequent to 1983. Therefore, we determine that the master's factual finding that Razatos had the present ability to pay is unsupported by the record and is clearly erroneous. As a result, no *remedial* contempt order can be imposed.[2]

■■ The evidence indicating that Razatos had the past ability to pay—during the period of 1981 to 1983—might be sufficient to support a *punitive* contempt sanction, for Razatos' disregard of the court's order to pay restitution can be viewed as conduct derogatory to the authority and dignity of the court. C.R.C.P. 107(d). However, the contempt citation—the order and rule to show cause—did not provide notice to Razatos that a criminal contempt sanction of a fine or imprisonment might be imposed as a punishment to vindicate the dignity of the court, as required by C.R.C.P. 107(d). *See Shapiro v. Shapiro*, 115 Colo. 501, 175 P.2d 387 (1946). Furthermore, the court ordered the master to determine *only* whether "the Respondent has the ability to pay the restitution previously ordered." By this order, the master was not directed to receive evidence concerning whether Razatos had the ability to pay at some earlier time or, if so, whether such past failure to pay constituted conduct offensive to the authority and dignity of the court. The absence of proper notice and hearing leaves this court without the foundation essential to support the entry of the requisite findings and the imposition of punitive contempt sanctions upon the respondent. *See* C.R.C.P. 107(d); *P.R. v. District Court*, 637 P.2d at 350–51; *Wright v. District Court*, 192 Colo. at 555, 561 P.2d at 16–17; *Marshall v. Marshall*, 35 Colo.App. at 445–46, 536 P.2d at 848.

In sum, neither criminal nor remedial contempt sanctions can be imposed on Ra-

**2.** The People's Motion for a Contempt Citation also asked for contempt sanctions against Razatos for an alleged failure to pay court costs ordered and for representing that the costs had been paid when they had not. The order to show cause included this charge. However, the master was not ordered to consider those issues, and no hearing directed to the matter of court costs has been held. The People did not object to the absence of the issue concerning court costs in the order appointing and instructing the master. On this record, a finding of contempt and the imposition of sanctions against Razatos for his failure to pay the costs and for misrepresenting that the costs had been paid would not be supportable. *See P.R. v. District Court*, 637 P.2d 346, 350–51 (Colo.1981); *Wright v. District Court*, 192 Colo. 553, 555, 561 P.2d 15, 16–17 (1977).

zatos, on the basis of the existing record, for failure to pay court-ordered restitution. We now turn to the question whether Razatos can be subject to contempt sanctions for refusing to testify concerning his present ability to pay as ordered by the master.

### III.

The master found that Razatos' refusal to testify at the March 29, 1984, and June 12, 1984, hearings was not a proper exercise of the privilege against self-incrimination and, when Razatos continued to refuse after being ordered to testify by the master, that such conduct constituted contempt committed in the presence of the court. Because we decide that the exercise of the privilege was valid and not an act of contempt, we need not analyze whether contempt committed in the presence of a master constitutes contempt committed in the presence of a court. *See* C.R.C.P. 107(b), (c). We begin with a review of relevant principles concerning the privilege against self-incrimination.

■ The protections of the Fifth Amendment to the United States Constitution, and of article II, section 18, of the Colorado Constitution, can be invoked by anyone whose statements or answers to questions might incriminate that person, either by directly admitting the commission of illegal acts or by relating information that would furnish a link in the chain of evidence needed to prosecute the claimant for a crime. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); *Tipton v. City of Lakewood,* 198 Colo. 18, 21, 595 P.2d 689, 691 (1979); *Griffin v. Western Realty Sales Corp.,* 665 P.2d 1031, 1033 (Colo.App.1983).

■ We have stated that the burden lies with the person asserting the privilege to establish that the privilege is properly invoked. *Tipton v. Lakewood,* 198 Colo. at 21, 595 P.2d at 691. However, this must be interpreted against the background of the controlling principle that before a court can compel a response or punish for contempt in the face of a claim of the privilege, it must be

> *"perfectly clear,* from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency"* to incriminate.

*Hoffman v. United States,* 341 U.S. at 488, 71 S.Ct. at 819 (emphasis and brackets in original, quoting from *Temple v. Commonwealth,* 75 Va. 892, 898 (1881), cited with approval in *Counselman v. Hitchcock,* 142 U.S. 547, 579–80, 12 S.Ct. 195, 204, 35 L.Ed. 1110 (1892)); *Tipton v. Lakewood,* 198 Colo. at 21, 595 P.2d at 691; *Griffin v. Western Realty Sales Corp.,* 665 P.2d at 1033. The court must either accept the assertion of privilege or inquire further to determine if there is a real danger of self-incrimination. The court cannot simply dismiss the assertion of privilege without discussion. *Quinn v. United States,* 349 U.S. 155, 164, 75 S.Ct. 668, 674, 99 L.Ed. 964 (1955); *Tipton v. Lakewood,* 198 Colo. at 21, 595 P.2d at 691. The witness need not reveal the essence of the protected testimony, but must only raise the possibility that incrimination could result from an answer. *Tipton v. Lakewood,* 198 Colo. at 21, 595 P.2d at 691; *People v. Borjas,* 191 Colo. 218, 222, 552 P.2d 26, 28 (1976).

Whether testimony of a person can be seen as incriminating that person when the "incrimination" consists solely of the spectre of adjudication and imprisonment for civil or criminal contempt is a matter of first impression.[3] The issue is relevant in determining whether Razatos' exercise of the privilege was proper.

■ The deprivation of a person's liberty has the same effect on the confined person when jailed after civil or other types of proceedings as when imprisoned after conviction for a crime. *See United States v. Anderson,* 553 F.2d 1154, 1156 (8th Cir.

---

**3.** Our discussion of the self-incrimination issue is limited in application to incrimination involving disobedience of a court order issued prior to the contempt hearing. It does not extend to summary contempt proceedings involving violation of orders issued during the course of the hearing or other misconduct during the hearing.

1977); *Padilla v. Padilla,* 645 P.2d 1327, 1328 (Colo.App.1982). For this reason, the possibility of imprisonment arising out of contempt proceedings, whether civil or criminal, has been held to trigger Sixth Amendment rights to counsel, *United States v. Anderson,* 553 F.2d at 1156; *People v. Lucero,* 196 Colo. 276, 283–84, 584 P.2d 1208, 1214 (1978); *Padilla v. Padilla,* 645 P.2d at 1328; to a jury trial when the possible deprivation of liberty exceeds a certain length, *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *People v. Zamora,* 665 P.2d 153, 154 (Colo. App.1983); to public proceedings, *P.R. v. District Court,* 637 P.2d at 350–54; and to call and confront witnesses in certain circumstances, *P.R. v. District Court,* 637 P.2d at 350–51; *Losavio v. District Court,* 182 Colo. 180, 185, 512 P.2d 266, 268 (1973). By analogy, the possibility of imprisonment for contempt should trigger the Fifth Amendment privilege against self-incrimination, and its Colorado counterpart, at least where the potential exists for a contempt sanction imposed as punishment. We hold that it does.

We turn now to the facts of the present case. At the March 29 hearing in which the privilege was first invoked, Razatos' attorney stated that Razatos was refusing to testify "[b]ecause we feel this is related to a contempt proceeding" and because "there is a possibility of contempt and incarceration." Razatos himself never explained why he was exercising the privilege. At the later hearing, on June 12, neither Razatos nor his attorney gave any explanation for Razatos' assertion of the privilege. The master did not inquire further into the rationale. The master's inquiry was not as searching and detailed as to the possible reasons for the exercise of the privilege as might be desired. On this record, however, it is safe to conclude that Razatos did not exercise the privilege for reasons unrelated to the contempt proceed-

ings, i.e., because disclosure of his financial records might lead to other criminal proceedings against him, such as prosecution for tax fraud.

The People argue that because this is a civil contempt proceeding, and because contempt is not a "crime," Razatos has no basis for exercising the privilege. However, as outlined above, the threat of incarceration for punitive reasons arising out of contempt proceedings is sufficient to support an exercise of the privilege against self-incrimination. It is not difficult to imagine that if Razatos testified about his financial status, and that testimony disclosed that he clearly had an ability to pay restitution at some or all times since being ordered to do so, the People might obtain a hearing, and this court might find Razatos guilty of criminal contempt and impose punitive sanctions. Thus, Razatos' disclosures could reveal past and present conduct that would expose him directly to punitive incarceration sanctions of indeterminate length. Only if Razatos clearly faced no possible imprisonment, save for remedial sanctions compelling him to perform, would the privilege be unavailable.

Therefore, it cannot be said that it is perfectly clear, from a careful consideration of all the circumstances in the case, that Razatos is mistaken and that his testimony cannot possibly have a tendency to incriminate. *See Hoffman v. United States,* 341 U.S. at 488, 71 S.Ct. at 819; *Tipton v. Lakewood,* 198 Colo. at 21, 595 P.2d at 691. Razatos' exercise of the privilege against self-incrimination was valid. For that reason, his refusal to testify before the master did not constitute an act of contempt.[4]

### IV.

On the record before us, we cannot impose contempt sanctions against Razatos for his failure to pay the restitution and court costs previously ordered by this

---

4. Our holding relates only to Razatos' refusal as a sworn witness to answer questions concerning his financial status, after being ordered by the master to testify. Razatos also seeks to have stricken from the record the documents that he turned over to the master at the hearing on

March 29, 1984. It is true that if a trial court errs when making a ruling overriding a valid assertion of the privilege against self-incrimination and compelling disclosure, an after-the-fact exclusionary rule may operate to prevent the utilization of that evidence against the witness.

court. Furthermore, Razatos' exercise of the privilege against self-incrimination was valid, and no contempt sanction can be imposed for his refusal to testify. The rule to show cause is discharged.

*In re Folding Carton Antitrust Litigation,* 609 F.2d 867, 872 n. 11 (7th Cir.1979). *See also Adams v. Maryland,* 347 U.S. 179, 74 S.Ct. 442, 98 L.Ed. 608 (1954); *In re Corrugated Container Antitrust Litigation,* 662 F.2d 875, 887–88 n. 27 (D.C.Cir.1981). However, the record establishes that Razatos waived any claim of privilege he might have had to withhold these documents. The essence of the Fifth Amendment, and of its Colorado counterpart, is to protect against the compulsion of a witness. *See Fisher v. United States,* 425 U.S. 391, 396–401, 96 S.Ct. 1569, 1573–1576, 48 L.Ed.2d 39 (1976). Here, Razatos produced the documents at issue while at the same time asserting that the privilege against self-incrimination could operate to protect them from disclosure. Razatos produced the documents *before* the master had a chance to consider whether the privilege might prevent their compelled disclosure. One cannot assert the privilege against self-incrimination and, at the same time, *freely* produce the documents or testimony sought. Razatos' attempt to do so constitutes a waiver of the privilege. For this reason, we need not address the question of whether a proper exercise of the privilege by Razatos would have prevented the master from ordering Razatos to produce these records.

We note also that Razatos did not turn over all of the records required by the master in the order of March 2, 1984. Neither the People nor the master specifically demanded of Razatos that he produce the rest of the records originally sought by the master. Nor was Razatos requested or ordered to produce any other financial records. The master's findings relate solely to Razatos' refusal to provide oral testimony concerning his financial status. For these reasons, we need not decide whether Razatos could exercise the privilege against self-incrimination to withhold from disclosure any particular personal or business-related financial records. *See United States v. Doe,* —— U.S. ——, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).